## Tapscott v. Commonwealth.

(Decided November 11, 1910.)

### Appeal from Hart Circuit Court.

1. Defense of Father by Son.—A son may do in defense of his father what the latter would do in his own defense.
2. Self-defense.—Where the deceased was shot by the son while attacking the father who had not attacked him or offered to do so, it was an error for the court to qualify a self-defense instruction by telling the jury that they could not acquit the defendant on the ground of self-defense if the father began the encounter, although there was evidence that the father was in a difficulty with another, and the deceased interfered as a peacemaker and while so doing was knocked down by another, the father being in no wise connected with this.
3. Cross Examination—Incompetent Evidence.—The defendant may not be required to state on cross examination that he has sold whiskey in violation of law and been fined for so doing.

S. M. PAYTON and WATKINS & CARDEN for appellant.

JAMES BREATHITT, Attorney General, and TOM B. McGREGOR, Asst. Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

James Tapscott and his three sons, William, David and Tom Tapscott were jointly indicted for the murder of James Estes, it being charged in the indictment that William Tapscott shot Estes and that the other defendants were present, aiding and abetting in the homicide. William Tapscott was tried separately. He was found guilty of voluntary manslaughter, and his punishment fixed at fifteen years confinement in the penitentiary. The facts of the homicide are these: The shooting occurred near Northtown church in Hart county on a Sunday in June, 1909. On that Sunday children's day was observed in the church, and there was an all day meeting. James Tapscott and his sons were there, and also the

Estes family, which included several sons. The congregation took dinner on the ground, and were all friendly until about the time the meeting closed, William Tapscott having invited James Estes, the deceased, to take dinner with him. Four young men from Edmonson county (called in the record, Ridge men), came to the meeting, and brought with them a half gallon of whisky, which was drunk there about the church during the day, the Tapscott boys and the Estes boys helping to drink it. About 3 o'clock one of the Ridge men got on his mule to go home; another not wishing him to go quite yet, took hold of the mule and as one was holding the mule and the other urging him to go on, they had the mule going around near the church door. James Tapscott came out of the church while this was going on, and reproved the boys for making a disturbance there. They acquiesced in what he said, and started off down the road, James Tapscott, his two sons, David and Tom, and some ladies following them. Some words passed between David and Tom Tapscott and one of the Ridge men which resulted in the latter using some vulgar and obscene language in the presence of the ladies. Tom Tapscott thereupon seized him and beat him until his mother told him to let him go. This boy, who was 18 years old, then ran off down the road, leaving his mule standing there, and as he ran off James Tapscott threw a rock at him. Some colloquy then ensued between the Tapscotts and the other three Ridge men, and a crowd gathered around them. James Estes was standing at the church gate smoking his pipe with his coat on his arm, and seeing the disturbance said to a friend, "Lets go down and settle that difficulty." The friend did not go with him, but he got on his mule and rode down to where the parties were. As he was going along he passed a man coming from the crowd who asked him to go down and stop the difficulty. There is some conflict in the evidence as to what occurred when James Estes got to the crowd. According to the evidence for the Commonwealth, he rode up to the crowd and said: "What is the matter, don't lets have any trouble here; we have all had a nice day," and then seeing Tom Tapscott by one of the Ridge men, got down off his mule, and started toward Tom Tapscott saying, "Give me that boy and I will take him home." As he was walking toward Tom Tapscott, David Tapscott, who was behind him, knocked him down with a rock which fractured his skull. He finally got up off the ground with some assistance,

asked who struck him, saying it was cowardly to strike a man that way, and took his knife from his pocket. He was unsteady on his feet from the blow he had received, and did not perhaps know what he was doing. In moving he got near James Tapscott who was standing there with a rock in his hand. He said to James Tapscott, "you are the man that hit me." Tapscott's wife, who was standing by, said, no her husband had not hit him, and tried to push Estes back. He pushed her to one side, and cut James Tapscott on the shoulder with the knife. Mrs. Tapscott screamed, and William Tapscott, who was standing behind Estes, with a pistol in his hand, fired and shot Estes through the head, killing him instantly, or practically so. The proof for the defendant tended to show that James Estes did not come to the scene of the difficulty as a peace maker, but that he did come to take part in it as a belligerent, and that he was cutting a second time at James Tapscott when William Tapscott shot him.

On these facts, the defendant asked the court to instruct the jury in substance that if he shot Estes in the necessary defense of his father, James Tapscott, they should acquit him. The court qualified the instruction as follows:

If, however, you believe from the evidence to the exclusion of a reasonable doubt that said James Tapscott or said James Tapscott or any one or more of his co-defendants willfully acting together and in concert with each other sought and commenced the rencounter with Jim Estes in which said William Tapscott shot said Estes (if he did shoot said Estes) and made the danger, if any, to said James Tapscott from said Estes necessary or apparently necessary to said Estes in order to defend himself from said James Tapscott or from said James Tapscott and his co-defendants willfully acting in concert with him (if any of them were), then and in that event the defendant William Tapscott cannot excuse himself upon the ground of apparent necessity unless the defendant James Tapscott or said James Tapscott and his co-defendant or co-defendants willfully acting in concert with him (if any of them were willfully so acting in concert with said James Tapscott) in good faith withdrew or attempted to withdraw from said rencounter before said William Tapscott shot said Estes (if he did shoot said Estes).

The propriety of the instruction must be tested by the evidence of the Commonwealth; for the State had a right to have its side of the case presented to the jury by an instruction. The evidence for the state clearly shows that Estes went to the crowd as a peace maker, and that David Tapscott was entirely inexcusable in striking him as he did with the rock; but there is an entire want of evidence connecting James Tapscott in any way with this. So far as appears from the evidence the action of David Tapscott in striking Estes with a rock was without the knowledge or consent of his father and in no manner anticipated by him. While it may be inferred from the evidence that James Tapscott and his two sons anticipated trouble from the Ridge men they had had no words with Jim Estes. He was in no way connected with the difficulty. When he unexpectedly appeared upon the scene as a peace maker, David Tapscott mistaking his mission, knocked him down with a rock, and Estes under the mistaken impression that James Tapscott had struck him, then attacked James Tapscott, who had not molested him in any way; and so far as the record shows was in no way responsible for the action of David Tapscott. When James Tapscott was thus attacked by Estes, he had the right to defend himself; for he had done nothing to Estes to deprive him of the right of self-defense against Estes. William Tapscott, the son of James Tapscott, had the same right to defend his father, as the father had to defend himself. He could do anything in the defense of his father which his father could do in his own defense. We do not see anything in the evidence which would have prevented James Tapscott from relying on the plea of self-defense if he had shot and killed Estes when he was cutting at him with the knife, and this being so, William Tapscott had the same right in defense of his father. (Utterback v. Commonwealth, 105 Ky. 723.) There is much in the evidence to show that James Estes was in a helpless condition at the time he was shot, and we do not determine that it was necessary for William Tapscott to shoot him in defense of his father. We only determine that this was a question for the jury, and that the qualification to the self-defense instruction which we have quoted should not have been given; but that the instruction as asked by the defendant should have been given without qualification.

The court erred also in requiring the defendant to testify on cross-examination that he had sold whisky in vio-

lation of law in Hart county, and. had been fined for·it some years before. Evidence of this character is not competent on cross-examination of the defendant. (Britton v. Commonwealth, 29 R. 857; Hensley v. Commonwealth, 31 R. 386, and cases cited.)

Nothing that any of the other defendants said not in the hearing of William Tapscott after the homicide can be given in evidence against him. And where proof is given ·to contradict a witness that he made out of court statements inconsistent with his testimony in court as to how the difficulty occurred, the court should always admonish the jury that such evidence is only to be con- sidered on the credibility ·of the witness and not as sub- stantive evidence in the case. The defendant ·will be allowed to testify as to his belief that his father ·was in danger of death or great bodily harm at the hands ·of Estes at the ·time he shot, and he may state all the facts attending the homicide to show that he had reasonable grounds for his belief.

Judgment reversed and cause remanded for a new trial and further proceedings consistent herewith.