## Copley v. Commonwealth.

(Decided May 6, 1919.)

Appeal from Carlisle Circuit Court.

1. Witnesses—Credibility—Cross-Examination—Character Witnesses. —Where defendant, charged with homicide, offered evidence of his good reputation for peace and good order, it was proper to cross-examine the witnesses as to whether they had heard rumors or reports of particular acts of misconduct on the part of the defendant, not for the purpose of proving such acts, but for the sole purpose of testing the accuracy and credibility of the witnesses.

2. Criminal Law—Instructions—Limiting Effect of Evidence.—Where such evidence is objected to, or a motion is made to limit its effect, its admission should be accompanied by an admonition that it is limited to the purpose for which it is admitted, and is not to be considered as substantive evidence of the defendant's guilt of the offense charged.

3. Criminal Law—Instructions—Limiting Effect of Testimony.—A witness may be contradicted by proving that he has, at another time or place, made a different statement from that contained in his present testimony, but when evidence of such contradictory statements is admitted, the court should instruct the jury that it is only admissible for the purpose of impeaching the credibility of the witness, if it does so impeach him, and for no other purpose.

**4.**    Homicide—Appeal—Instructions.—Where the instructions sub-
stantially state the law of the case, a conviction of homicide will
not be reversed for slight inaccuracies.

R. B. FLATT for appellant.

CHARLES H. MORRIS, Attorney General, and BEVERLY M. VIN-
CENT, Assistant Attorney General, for appellee.


OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COM-
MISSIONER—Reversing.

On January 2, 1919, Millard Copley shot and killed
Oliver Fraser in the county of Carlisle. Copley was in-
dicted for murder and convicted of manslaughter, and
appeals from a judgment fixing his punishment at four-
teen years' confinement in the state penitentiary.

At the time of the homicide appellant was employed
by the United States in maintaining the government
lights on the Mississippi river, and resided near the
river, in Carlisle county. On December 31, 1918, the de-
ceased, Oliver Fraser, and James Walker, who were en-
gaged in the business of rafting timber, came from Hick-
man and stopped at appellant's house for the purpose
of obtaining board. Appellant, not being at home at the
time, his wife refused to furnish them board. Thereupon
they continued up the river toward Wickliffe, where they
met appellant returning from Cairo, Illinois. They in-
formed appellant that they had stopped at his house to
obtain board, whereupon appellant told them that he
would keep them for a few days. Thereupon they and
appellant returned to appellant's house, about five o'clock
in the afternoon. Walker suggested a game of cards and
appellant won $78.00. The deceased furnished Walker
the money to gamble with.

On the following morning appellant, Fraser and
Walker went to Cairo, Illinois, for the purpose of getting
some batteries and gasoline for their motor boat. While
there Fraser got three quarts of whiskey and appellant
and Walker one quart each. Walker also purchased a
new deck of cards. Later on, he and appellant played
again and appellant won more money from him, which
was furnished by Fraser. On the following day Fraser
and Walker prepared to leave appellant's house but re-
turned late in the afternoon on account of the roughness
of the river. They had supper but Walker did not eat

anything.   After supper they were seated in a small room.   According to the evidence of Walker, he was sitting in front of the cooking stove and was leaning over on the table.   He, appellant and Fraser had been discussing union labor.   His attention was first attracted by Mrs. Copley's saying, "Don't start something," or, "Don't do this."   In a moment he looked up and Copley sprang and got his gun and shot Fraser.   Before the shooting he heard something fall on the floor.   After the shooting Copley remarked in substance that Fraser had tried to cut him and he shot Fraser.   There was a knife lying on the floor near Fraser.   Nobody had hold of Fraser at the time he was shot.   Fraser was standing up at the time he was shot.   After the shooting appellant said, "Jim is lucky that he ain't in that same shape," and requested his wife to telephone for the sheriff.   On cross-examination Walker testified that he was drunk that afternoon and had been asleep when the shooting took place.

Appellant's evidence was as follows: Tom Bush met him that afternoon and told him that Fraser and Walker had stated to him that they were going to have their money that appellant won or cut his head off and throw it in the river.   Just prior to the homicide he and Walker were discussing union labor.   Fraser seemed to be moody and was pacing up and down the floor near appellant.   All at once Fraser seized him by the throat and forced him back.   Mrs. Copley then said, "Don't start any trouble here."   When decedent seized appellant something fell to the floor which turned out to be Fraser's knife.   Fraser had canvas gloves on his hands.   Appellant succeeded in freeing himself from Fraser when they both tried to get the knife.   Fraser stepped forward in a stooping position for the purpose of picking up the knife.   Appellant kicked the knife out of his reach, and seizing his gun, fired the fatal shot.   Tom Bush testified that he communicated to appellant the threat made by Fraser and Walker.

Several witnesses testified that appellant's reputation for peace and good order was good, while several other witnesses testified to the contrary.

On the cross-examination of Sug Hicks, who testified that appellant's reputation for peace and good order was good, the witness, over the objection of appellant, was permitted to testify as follows:

"Q. Mr. Hicks, you knew Andy Bodkin during his lifetime? A. Yes, sir. Q. You heard about him having been killed down in the bottom? A. Yes, sir. Q. You heard it said or rumored this man killed him, hear it talked? A. Well, I don't know whether I have or not. Q. I will ask you if it is a fact that you heard about Andy Bodkin having him arrested for getting Turk's pecans? A. Yes, sir. Q. You heard about him telling Ramond Hammons that if Andy Bodkins fooled with him he would kill him and put him in the river? A. I believe I heard it. Q. You heard about him being over at Mattie Thornton's with a shotgun and had to put him out of the house? A. No, sir. Q. You heard about him threatening to shoot Charlie Reeves' head off and put him in the river? A. I think I heard something about it. Q. How much do you work there about the river? A. Yes, sir, good deal. Q. Have you frequently seen him carry that shotgun? A. I have."

Other witnesses as to the good reputation of appellant for peace and good order were permitted to give the same character of testimony.

It is well settled that where the defendant offers evidence of his good reputation, the witness may be asked, on cross-examination, if he has not heard rumors or reports of particular acts of misconduct on the part of the defendant, not for the purpose of proving such acts, but for the sole purpose of testing the accuracy and credibility of the witness; but where there is an objection to such evidence, or a motion to limit its effect, the court should admonish the jury that it is admitted for the sole purpose of testing the accuracy and credibility of the witness and not as substantive evidence of the defendant's guilt of the offense charged. McCreary v. Commonwealth, 158 Ky. 612, 165 S. W. 981; Clark v. Commonwealth, 165 Ky. 472, 177 S. W. 251. Otherwise the jury might in a doubtful case convict the defendant upon evidence of other offenses not necessary to identify the accused, or to show guilty knowledge, a criminal intent or motive, or a system of criminal action. Cleary v. Commonwealth, 163 Ky. 48, 173 S. W. 171. Under the facts of this case the failure of the court to give the proper admonition was prejudicial error.

On the cross-examination of appellant, the Commonwealth introduced the stenographer's transcript of his evidence given on the examining trial, and cross-ex-

amined him in reference thereto for the purpose of impeaching him. While it is true that a witness may be contradicted by proving that he has, at another time or place, made a different statement from that contained in his present testimony, yet when the evidence of such contradictory statements is admitted, the court should instruct the jury that it is only admissible for the purpose of impeaching the credibility of the witness, if it does so impeach him, and for no other purpose. Ashcraft v. Commonwealth, 24 Ky. Law Rep. 488, 68 S. W. 847; White v. Commonwealth, 84 S. W. 340, 27 Ky. Law Rep. 50; Tapscott v. Commonwealth, 140 Ky. 573, 131 S. W. 487; Higgins v. Commonwealth, 142 Ky. 647, 134 S. W. 1135. In this case no such admonition was given.

The only complaint made of the instructions is the omission from the instruction on willful murder of the words, "and not in his necessary or apparently necessary self-defense," and the omission from the instruction on manslaughter of the words, "or apparently necessary self-defense." In view of the fact that the instructions, when construed as a whole, substantially present the law of the case, the omission of the words in question will not be regarded as prejudicial error. McCandless v. Commonwealth, 170 Ky. 301, 185 S. W. 1100. It is the better practice, however, to incorporate the omitted words in the instructions on willful murder and manslaughter. On another trial, the court will insert after the words, "malice aforethought," in the instruction No. 1, the following, "and not in his necessary or apparently necessary self-defense, as set out in instruction No. 4," and in instruction No. 2 on manslaughter, after the words, "necessary self-defense," the words, "or apparently necessary self-defense as set out in instruction 4."

Judgment reversed and cause remanded for a new trial consistent with this opinion.