## Shell v. Commonwealth.

(Decided May 16, 1922.)

### Appeal from Harlan Circuit Court.

Homicide—Instruction on Self-Defense—Qualification—Support by Evidence.—In a prosecution for murder, evidence that the accused had threatened the deceased and had fired first held insufficient to authorize an instruction qualifying the right of self-defense, if the accused brought on the difficulty with the deceased by assaulting him with a deadly weapon, or by making threats or demonstrations to do so, where the uncontradicted evidence

showed that the deceased brought on the difficulty by attempting to shoot the accused before the accused fired or attempted to fire.

HALL, JONES & LEE for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Add Shell, who was convicted of murder and given a life sentence, prosecutes this appeal.

The only error relied on was the giving of the following instruction qualifying the right of self-defense:

"Unless you shall further believe from the evidence to the exclusion of a reasonable doubt, that the defendant at a time when he was not in danger of death or great bodily harm at the hands of the deceased, and did not believe and have reasonable grounds to believe that he was in such danger, unlawfully, wilfully and feloniously provoked and brought on the difficulty with the deceased by assaulting him with a deadly weapon or by making threats or demonstrations to do so, and thus made the harm or danger to himself, if any there was, excusable on the part of the deceased in his (deceased's) necessary or apparently necessary self-defense, then you cannot acquit the defendant on the grounds of self-defense."

A proper solution of the question will necessitate a brief statement of the facts. It is conceded that appellant shot and killed Henry Blanton on September 12, 1921. The evidence for the Commonwealth is as follows: Noah Bailey testified that he was near one of the election precincts at the preceding August primary which occurred on August 6th. Jake Brock and Add Shell were present. Henry Blanton walked up when Add said, "Some G—d d—d son of-a-bitch has been lying on me." Henry Blanton went into his saddle pockets after his pistol. Add also got his pistol out. Jake Brock grabbed Blanton and told him not to have any trouble. Witness and Brock took Blanton up the branch. As he took him off, Blanton said that no man could live and call him a son-of-a-bitch. Harrison Bailey and his son, Elihu Bailey, both testified that they were present on the same occasion, and that when Harrison Bailey asked Add what was the matter, Add said: "Me and Henry Blanton is about to have a little trouble. I am going to kill that G—d d—d son-of-a-bitch if he don't let me alone." Harve Pace testified that he was

at the election ground on the occasion in question, but did not see any of the trouble. He left there with Henry Blanton and went up the hollow a piece. John Jackson testified that on September 12th he was going down the Kentucky ridge. Add Shell called to him to hold up. Shell told him that Henry Blanton had treated him dirty and wanted to buy witness' gun, which was a "38 special." Cindy Toliver was nearby. Witness declined to sell his pistol and Shell remarked, "I am going to kill Henry Blanton before I leave this hill or be killed." After going about three-quarters of a mile in an air course, witness heard some shots fired. The first two shots came from a large gun and then three shots came from a smaller gun. Then there was a shot from a large gun, followed by a shot from a small gun. Sally Blanton testified that, on the morning of the homicide, Oscar Yeary came to her home, walked up the branch with her husband and had a talk with him. About two hours later her husband left. Some time thereafter she heard the firing. She then went to the place of the homicide and saw Lige Vanover, Cindy Toliver, Oscar Yeary and Jim Toliver there. Her husband was shot three times. Her husband owned a "38 special" and had it on when he left home. Sillus Blanton, a son of the deceased, testified that he was out squirrel hunting with Lige Vanover at the time of the killing. He heard the shooting. The first two and the last two shots came from a small gun. He then went to the place of the shooting and found his father lying stretched out on the ground with his head in Cindy Toliver's lap. His father was shot three times, once in the abdomen, once in the back and once in the right arm, which was broken in two. His father said that he was killed. He said that Add Shell shot him and that Add fired the first two shots. He made no other statement in regard to the circumstances of the killing. Lige Vanover, the father-in-law of Sillus Blanton, testified that he was with Sillus when the firing occurred. When they got there Cindy Tolliver was the only one present. Witness asked deceased who fired the first shot and he replied that Add Shell did. Deceased said that the shot in the abdomen was the first shot fired, and he then wheeled and Shell shot him in the back. It was late in the afternoon when the shots were fired. Deceased did not say in his presence who fired the second shot, nor did he say who fired the next to the last shot. Witness did not ask him about that.

Defendant testified in substance as follows: On the occasion of the primary election he walked up to where Noah Baily and Jake Brock were, and said, "Boys, somebody has told a d—d lie on me." At that time he did not know Henry Blanton was present. Henry Blanton then went into his saddle pockets and came out with his pistol in his hand. When he did that, witness made for his own pistol. Two or three of the men caught Blanton and took him up a little branch. That was all that occurred that day. On the day of the homicide, Otto Coldiron came to defendant's house. They left and went up the Woodyard branch. Otto Coldiron stopped at the road. Witness went to Oscar Yeary's down in the branch where there was a still. When he arrived there no one was there but Oscar Yeary. Afterwards Otto Coldiron came to the still. Later on Cindy Toliver came. While there Henry Blanton came up. Blanton pulled out a bottle of whiskey and gave Oscar Yeary and Cindy a drink. Blanton said, "Add, me and you have had a little dispute and there is no better time to settle it than right now." Witness said, "I thought me and you had made friends." Blanton said, "No, by God, we haven't made friends." Witness said, "I don't want no trouble with you, Henry, at all. Give me a drink of whiskey and I will go home." Henry said, "By God, I won't give it to you, but I'll reach it to Oscar Yeary and he can give you a drink." Witness said, "I won't drink unless you give it to me yourself." He reached it over with his left hand and when witness went to get the whiskey, Blanton jerked his pistol with his right hand and said, "I am going to kill you. No man can call me a son-of-a-bitch and live. You called me a son-of-a-bitch down at the election." Witness said, "I did not. I said that the man that told that lie on me was a son-of-a-bitch, but I didn't know who it was." Blanton threw up his pistol, cocked it and pointed it at witness' breast. Witness could not raise his pistol. Blanton dared him to move his hand. Witness said, "Blanton, I don't want no trouble." Blanton said, "You have got as good a gun as mine. We'll shoot it out." Witness turned around and said, "If you shoot me, you can shoot me in the back," and walked off about seventy-five yards. Cindy Toliver went with him. At that time he met John Jackson and tried to buy his pistol. After sitting there for about three-quarters of an hour Oscar Yeary called to him to come back and get the whiskey he had bought. He was then from seventy-five to one hundred yards from

the still. Yeary told him that Blanton had gone home. He, Yeary and the woman were all walking along. The first thing he knew Blanton stepped out from behind a little tree, drew his pistol and fired two shots. One of the shots struck him in the leg, breaking the bone and throwing him down. Blanton came on him and witness raised up and began firing, and they both emptied their pistols. Deceased never fell and witness could not tell that he had hit him. After witness had fired four or five shots, deceased said, "G—d d—n you, I aimed to finish you." When witness started back, he did not know that Blanton was behind the tree but thought that he had gone home. Oscar Yeary, who was a friend of both parties, and Cindy Toliver, who was a sister-in-law of the accused, both corroborate the accused. Oscar Yeary gave more of the details connected with his efforts to calm the deceased at the time of the first difficulty. He further stated that the deceased had gone off and he went and informed the accused of this fact and told him that he could then get his whiskey. He and Cindy both say that the deceased stepped from behind the tree, levelled his pistol on the accused and commanded Yeary and Cindy to get out of the way or he would shoot them. They also say that deceased fired the first shot. Otto Coldiron, who went to the still, did not see any of the trouble. James Toliver testified that he went to the place of the killing with Lige Vanover and Sillus Blanton. Neither Lige Vanover nor Sillus Blanton asked Henry Blanton who fired the first shot, nor did Henry Blanton state who fired the first shot.

It is the insistence of the Commonwealth that the evidence of the threats made by the accused against the deceased, supplemented by the dying declaration of the deceased that the accused did fire first, was sufficient to authorize the giving of the instruction complained of. If it were the rule that one lost the right of self-defense by firing first or making an attempt to do so, the right would be of but little value. In a case like this it is only where the accused is the aggressor and brings on the difficulty by firing first, or attempting to do so, that he forfeits his right of self-defense. In other words, the essential feature which deprives him of the right of self-defense is unlawful conduct in bringing on the difficulty. Therefore, if the deceased has already brought on the difficulty by leveling his pistol at and attempting to shoot the accused, the accused may fire first without losing the

right of self-defense.  It must not be overlooked that the trouble at the primary election occurred several weeks before, and that the first difficulty on the day of the homicide had ended about an hour before by the separation of the parties, the accused going in one direction and the deceased in another.  During that difficulty the accused did not attempt to carry out the threats he had made against the deceased but voluntarily retired from the difficulty.  The deceased made no dying declaration as to any circumstance attending the homicide other than the fact that the accused fired the first shot.  Aside from this circumstance, the evidence of what occurred is all one way.  The deceased had left the still.  Yeary informed the accused of this fact and told him that he could return and get his whiskey which he had already bought.  Yeary, Cindy Toliver and accused started towards the still for this purpose.  As they returned the deceased stepped out from behind a tree, levelled his pistol at the accused, announced his purpose of shooting him and commanded Yeary and Mrs. Toliver to get out of the way.  Even if the accused did fire first, he did not bring on the difficulty, for the deceased had already brought on the difficulty by attempting to shoot the accused.  Though evidence that the accused had threatened the deceased and had fired first may in many instances authorize the giving of an instruction qualifying the right of self-defense, we conclude that it was not sufficient in this case, in view of the uncontradicted evidence that the deceased had already brought on the difficulty by attempting to shoot the accused before the accused fired or attempted to fire.  Reed v. Commonwealth, 140 Ky. 736, 131 S. W. 776; Estepp v. Commonwealth, 185 Ky. 156, 214 S. W. 891.

Judgment reversed and cause remanded for new trial consistent with this opinion.