## Shell v. Commonwealth.

(Decided October 30, 1923.)

### Appeal from Harlan Circuit Court.

1. Homicide—Dying Declaration Not Affected by Subsequent Temporary Revival.—That a person in extremis revives temporarily and for a while cherishes a hope of recovery does not affect the competency of a former dying statement if it was made under the conditions sanctioned by law, imminence of dissolution and full belief of impending death.

2. Homicide—Statements of Deceased, Expressing Hope of Recovery, Admissible After Admission of Dying Declaration.—If, after making a dying statement, the declarant thereafter feels better and expresses hope of recovery, his expressions of hope may also be given in evidence, and the jury may consider all of them in determining the weight to be given the declaration.

3. Criminal Law—Province of Jury to Pass Upon Credibility of Witnesses.—Where the testimony of witnesses was conflicting, it was the province of the jury to pass upon the credibility of the witnesses and to determine which side they would believe.

4. Homicide—Verdict for Manslaughter Not Flagrantly Against Evidence.—In a prosecution for murder, a verdict for manslaughter

held not so palpably and flagrantly against the weight of the evidence as to authorize the reviewing court to set it aside.

CLEON K. CALVERT for appellant.

THOS. B. McGREGOR, Attorney General, and LILBURN PHELPS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

This is the second appeal of this case. Appellant was indicted for murder. On the first trial he was found guilty and his punishment was fixed at confinement in the penitentiary for life. That judgment was reversed on account of error of the lower court in qualifying the self-defense instruction. The opinion is reported in 194 Ky. 767.

On the second trial he was convicted of manslaughter and his punishment fixed at ten years in the penitentiary.

The only grounds relied upon in this appeal are (a) error of the court in admitting incompetent evidence, (b) the evidence is insufficient to support the verdict.

The first ground relates to a dying declaration. One witness testified that he heard the shots and went immediately to the place of the shooting. He noticed that the deceased "was shot and suffering mightily," "that he was laying on the ground, rolling back and forth, praying and looked like he could not be still a minute," and "he said he would not get well, he was bound to die. I asked him who fired the first shot, him or Add, and he said Add." He further says that "he never did express any hope of recovery," and described the language of the deceased thus: "All I heard him say was how the shooting occurred; he put his finger on this hole here (belly) and he said: 'This is the first shot, and I wheeled and he shot me in the back.'" He further states that the deceased was shot on the eleventh and died on the thirteenth of the month.

Deceased's son arrived about the same time and describes the wounds in his father's body, and states that "he was rolling about and said he was killed," and that he heard him say: "Add shot two shots in the bush where he was sitting. . . . All I heard him say was he said the first shot that was fired hit him here (abdomen), and he wheeled his back to him and the next one hit him in the back."

"Q. Did he say who shot him? A. Yes, sir. Q. Who? A. Add Shell. Q. Did he say who fired the first and second shots in that difficulty? A. Yes, sir. Q. Who? A. Add Shell; he said Add Shell shot him the first shot."

It appears that the following day deceased was carried to a hospital and while there a witness visited him to take his dying declaration. Deceased told the witness he thought he would recover, and a statement was not given. Witness thought this was a day or two before deceased's death. Evidently it was the day before his death and the day after the declaration narrated above. It is argued that the subsequent revival of a belief in his recovery indicates that deceased had never abandoned hope of recovery, and therefore the evidence should have been excluded. The argument is plausible, but the question is not a new one in our court.

It is a well known fact that a person *in extremis* may revive temporarily, and for awhile cherish a hope of recovery, although a short time previously he was utterly despondent. But such occurrence does not affect the competency of a former statement if it was made under the conditions sanctioned by law. It is the imminence of dissolution and the full belief of impending death that authorize such statements to be given in evidence.

If after such statements the declarant thereafter feels better and expresses hope of recovery, such statements may also be given in evidence and the jury may consider all of them in determining the weight to be given the declaration. Whitehead v. Commonwealth, 200 Ky. 440.

As to the second ground, it is conceded by appellant that the evidence is precisely set out in the former opinion. From this it will be seen that there had been a previous difficulty between the parties. Threats and counter threats continued up to the homicide, accused trying to secure a better pistol with which to kill deceased. When they met that day both were armed. According to the deceased in his dying declaration, the accused shot first, wounding him in the abdomen and after he wheeled shot him in the back. This is contradicted by the other witnesses, but it authorized a submission to the jury, and two juries under the same facts have agreed on his guilt. It was their province to pass upon the credibility of the witnesses and to determine which side they would believe, and while if we were triers of the facts we

might reach a different conclusion, we cannot say that in accepting the theory of the Commonwealth that their verdict was so palpably and flagrantly against the weight of the evidence as to authorize us to set it aside.

Judgment affirmed.