## Smith v. Commonwealth.

(Decided December 19, 1930.)

VINSON & MILLER and CAIN & THOMPSON for appellant.

J. W. CAMMACK, Attorney General, and HOWARD SMITH GENTRY for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The appellant shot and killed William Williams in Lawrence county, and the trial on the indictment charging him with murder resulted in a conviction for manslaughter and he was given five years in the penitentiary. Williams was his brother-in-law. He and his wife had not lived happily together, and during the period of their marriage, covering about seven years, they had lived together only a small part of the time. They had one child, a girl about six years of age. On Thursday preceding the tragedy on Sunday, Williams left the home of his father where he and his wife were residing at the time, and returned early Sunday morning. On the morning following the day that he left, his wife took the little girl before the rest of the family had arisen and went to the home of her father and mother about four miles away.

William Williams was regarded as a dangerous, desperate man when he was aroused and particularly when he was drinking. It appears that he had not been drinking any for some time, and that he was not drinking on the day of the tragedy. His wife was afraid of him and he had made some threats about what he expected to do to her and with the child immediately before he left. When he returned on Sunday morning he armed himself heavily and, over the protest of his parents, left their home to go to the Smith home with the declared intention of obtaining the possession of his little girl. He induced

a man named Yates to go with him, who also armed himself. When they reached the Smith home about 11 o'clock, they concealed themselves awaiting an opportunity to obtain the custody of the child. They remained in concealment about thirty minutes, when the child, with another little girl about ten years of age, came out from the house into the potato patch. He proceeded at once to where his daughter was and caught hold of her, when she and the other girl screamed. What took place after that was a matter for the jury to determine from the widely variant evidence.

The man Yates, who was with Williams, testified that the appellant fired two shots at Williams with a pistol while Williams had hold of his daughter, and that Williams then fired his shotgun at Smith. Smith then threw his pistol on the ground, went back into the house, obtained a gun, and came out into the yard and shot Williams while he was pursuing the little girl, who had broken loose from him. Williams fell to the ground and remained in the position where he fell for several hours. Yates appears to have fled.

The evidence for the appellant discloses facts greatly different. He had been to the county fair at Louisa the night before and did not return home until about 2 o'clock in the morning. He was still sleeping when he was awakened by the cry of the children in the garden, or by his mother. He rushed down in his nightclothes and went to the door, his mother accompanying him. A shotgun was fired and some of the shots entered the door and some the side of the house near the door. They proceeded to the yard, and when they had reached the yard the mother discovered Williams behind a tree with his shotgun drawn and she warned her son, the appellant. He undertook to get across the yard to an outbuilding where he could conceal himself, but as he proceeded he was shot in the back part of the leg by Williams. The mother called to a younger son to get a gun out of the house, whereupon he obtained a twenty-two caliber rifle and brought it to his mother, who took it to her son. Williams was proceeding down towards appellant, and, according to their testimony, fired once or twice. The appellant fired at him but missed him. He then went to the back of the outbuilding, reloaded his little gun, and as Williams approached he fired another shot at him which struck him about the neck and he fell to the ground. Williams was finally taken to a hospital, where he died

a few days later. Before dying he signed a statement which was introduced in evidence as his dying declaration.

It is contended by counsel for appellant that the verdict of the jury is not supported by the evidence, but the evidence detailed above is sufficient to uphold the verdict.

It is next insisted that an instruction should have been given to the effect that appellant had the right to defend the home, or to shoot Williams in defense of the home. The cases relied on are Hendrickson v. Com., 232 Ky. 691, 24 S. W. (2d) 564; Sawyer v. Com., 227 Ky. 435, 13 S. W. (2d) 267; Raines v. Com., 214 Ky. 211, 282 S. W. 1109; Noe v. Com., 227 Ky. 578, 13 S. W. (2d) 763. The Hendrickson case presents an entirely different state of facts to that stated in the case before us. There the attack was made on the house and Hendrickson was defending the home of his mother. He was a guest at his mother's home, but the court held that the fact that he was a guest in his mother's home did not deprive him of the right to defend the home, as the guest in defending the home might exercise the same right as the owner.

The Sawyer case also presents a different state of facts. There one Riley, after having been warned by Sawyer not to come into the home, attempted to force his way in.

In the Noe case the person who was shot was attempting to force his way into the room through a window, and was shot while he was doing so after there had been a previous difficulty between the parties.

In the Raines case it was held that one may eject from his home an intruder and if the intruder resists and thereby places the owner in danger of loss of life, or great bodily harm, the owner of the home has the right to use such force as is necessary to eject him.

None of these cases supports the contention of counsel for appellant. It is true the evidence disclosed that some one fired into the door and the side of the house, but the fair inference to be drawn from this evidence is that the party was shooting at the appellant if he fired the shot. After that incident appellant proceeded away from the home and the difficulty was renewed, and at the time appellant fired the fatal shot he had no reason to believe that Williams was making an attack on the home. The instruction contended for by appellant should not have been given.

Another ground relied on is that the court erred in qualifying the self-defense instruction. The qualification was to the effect that if appellant brought on the difficulty by first shooting at Williams, he could not avail himself of the plea of self-defense. The qualification was improper under the facts in this case. Appellant did not bring on the difficulty. It was brought on by the conduct of Williams in going upon the premises and attempting to forcibly take therefrom his little girl. It is not every one that fires the first shot that brings on the difficulty. Shell v. Com., 194 Ky. 767, 240 S. W. 747.

Another ground relied on is that the dying declaration should not have been admitted because the evidence does not show that it was made under a sense of impending dissolution. If there was no evidence except the dying declaration itself, there would be much force to the argument; but aside from the statements in the dying declaration to the effect that the doctors had told him that he had a close call and that he felt that he was going to die from his wound, there was evidence by other witnesses that he stated that he was not going to recover, and that he was told so by the attending physician. The court properly overruled the objection to the admission of the dying declaration as a whole.

We come now to a more serious objection to the evidence, and that is parts of the dying declaration admitted over the objection of appellant. The trial court ruled correctly where objections were made in admitting all parts of the dying declaration except those specifically mentioned below. It has been held in a number of cases that a dying declaration is not competent further than it details the events that took place at the time the fatal wound was received. The true rule will be found stated in Caudill et al. v. Com., 220 Ky. 191, 294 S. W. 1042; Farley v. Com., 218 Ky. 435, 291 S. W. 734; Wooton v. Com., 200 Ky. 588, 255 S. W. 153; Winstead v. Com., 195 Ky. 484, 243 S. W. 40. In the light of these authorities we will examine the parts of the dying declaration complained of. This statement was objected to: "Jay Smith had fired on me twice before this. The first time he shot me was back in 1924. The second time in 1926." It was improper to admit that part of the dying declaration. The next part objected to is as follows: "The first time he shot at me I had no weapon and had to run. At that time he shot at me with a shot gun and hit me in the legs and in the back." The court improperly admitted

that language. The other objections were properly sustained or overruled, but there are some incompetent statements in the dying declaration which should be eliminated in reading it to the jury on another trial. We find this statement: "I only wanted my child to take her with me. I didn't do anything." The court sustained an objection to the second sentence, but there was no objection to the first sentence. It should be eliminated.

We find this statement that was not objected to: "The child had been over at Smiths' three or four days. I had been keeping the child until that time." That was not competent, but there was no objection. Another statement that should be eliminated is this: "Me and my father always kept the child in clothes." Another statement, while of no importance, should be eliminated: "William Smith is a brother of Doc Smith, and Doc Smith is the father of Jay Smith, the man who did the shooting." The following statement should also be eliminated: "My wife left me while I was out hunting a place to live with her and went to her father's house. She left in the night time or early in the morning."

With the eliminations indicated and the eliminations made by the trial court, the remainder of the dying declaration is competent.

For the errors indicated, the judgment must be reversed. Judgment reversed, and cause remanded for proceedings consistent with this opinion.

Whole court sitting.