## Commonwealth v. Girkey.

(Decided October 6, 1931.)

J. W. CAMMACK, Attorney General, SAMUEL B. KIRBY, Assistant Attorney General, and J. S. SANDUSKY for appellant.

B. J. BETHURUM and WM. M. CATRON for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Certifying the Law.

The appellee, Henry Girkey, was convicted of manslaughter, and on his appeal the judgment is today reversed. The commonwealth, under the authority of sections 335 and 337, Criminal Code of Practice, has filed this appeal because of errors alleged to have been committed by the trial court which were prejudicial to the commonwealth and upon which it is important to have a certification of the law. An outline of the evidence is necessary for a proper understanding of the points involved.

The defendant had formerly owned and lived in a house on a larger tract of land, but had disposed of it to Walter Hines, and seems to have been dispossessed by legal proceedings. In January, before the homicide in November, he had leased a tenant house upon a small tract to Dick Turpin, as he claimed, only until he should have gathered his crop, but, according to others, the lease was for a period of one year. It was arranged, however, that Turpin should move into the house formerly occupied by Girkey, and he was to move into the other building. Girkey had moved his household goods and stored them for a few days in the barn of a neighbor awaiting the removal of Turpin. A day or two before the day of the killing, it appears that Turpin had moved out all of his effects, except a few odds and ends and some stock left in the barn. Upon the assumption that Turpin had moved out, Girkey and members of his family went to the house so vacated, taking with him a borrowed rifle. Some of their effects, including an ax, were also moved there. While he and his wife were in the building, Turpin, his wife and other members of his family returned, as they say, to feed their stock. According to the evidence of the defendant, Mrs. Turpin came into the house, and, seeing Mrs. Girkey, inquired, "What does this mean?" to which she responded. "It means that I am in my own home." About that time Turpin hastened around the house and rushed into the room with

an ax in his hand, and, brushing aside his wife, with an oath told Mrs. Girkey to get out, at the same time taking hold of her and raising the ax to strike her. The defendant, apparently unknown to Turpin, was at one side of the room with his rifle. According to the defendant, while Turpin was in the act of striking his wife with an ax, he turned his head and saw him, and at that moment the defendant fired at him. The evidence is conflicting as to whether the ball entered the back of Turpin's neck and came out through his mouth, or whether the entrance and exit were the reverse. During his testimony, the defendant several times explicitly declared that he shot Turpin in order to save the life of his wife. There is no claim of self-defense.

On the trial the court permitted evidence of an attack made by the deceased upon the defendant in which he drew a knife across his throat and also of several threats of the deceased to do him personal violence. The admission of this evidence, it is submitted by the Attorney General, was erroneous because of the fundamental rule that evidence of threats by a deceased person against a defendant charged with homicide is only admissible when there is a claim and supporting evidence that the killing was necessary to prevent the loss of his own life or serious bodily harm to himself through an overt act or hostile demonstration on the part of the person killed, and the defendant in this case made no such claim. That such threats and hostile acts on the part of a deceased against a defendant charged with a killing under such circumstances and where he seeks to justify his act on the ground of self-defense are admissible is well settled. Roberson's Criminal Law, sec. 431; Forman v. Commonwealth, 228 Ky. 696, 15 S. W. (2d) 450; Winkler v. Commonwealth, 229 Ky. 708, 17 S. W. (2d) 999; Colson v. Commonwealth, 200 Ky. 402, 225 S. W. 60; Murphy v. Commonwealth, 205 Ky. 493, 266 S. W. 33. The rule is extended to permit the introduction of similar statements and conduct which, though they may not be actually directed against the accused, are general and comprehensive, and may tend to show motive or malice or the state of mind of the antagonist against him and his associates, or for the purpose of determining who was the aggressor in the difficulty. Wheeler v. Commonwealth, 120 Ky. 697, 87 S. W. 1106, 27 Ky. Law Rep. 1090; Commonwealth v. Thomas, 104 S. W. 326, 327, 31 Ky. Law Rep. 899; Ellis v. Commonwealth, 146 Ky. 715,

143 S. W. 425. It is under this conception of relevancy that the appellee seeks to sustain the admission of the threats made by the deceased. That rule, however, is qualified, or, rather, the character of threats may be distinguished where they are impersonal, conditional, and indirect, and where they do not disclose a state of mind antagonistic to the accused specifically or are not applicable to him as one of a class or group. Such are not admissible. Thus, where a deceased some days before the killing stated that he was going to the election, and, if things did not go his way, he was going to kill some one, it was held that such statements were inadmissible upon the trial of one charged with his killing. Commonwealth v. Hoskins, 35 S. W. 284, 18 Ky. Law Rep. 59. In Ashcraft v. Commonwealth, 68 S. W. 847, 24 Ky. Law Rep. 488, the defendant killed Brown, whom he believed was about to interfere in a fight between the defendant's brother and Watson. He claimed he fired in defense of his brother. A statement of Brown shortly before the fight that he would use his pistol, which he exhibited, if any one bothered Watson that night, was held irrelevant. There are other extensions and qualifications of the general rule which are discussed in section 431 et seq., of Roberson's Kentucky Criminal Law.

But it does not appear that there has hitherto been before us the question of the admissibility of threats and hostile acts of the person killed which cannot be construed as directed against the one whom he was assaulting at the time he was killed, or which do not involve or tend to manifest ill will against the person defended, and which were only against the one who acted in defense of that third person. At least this court has not directly passed upon the question. Other authority is limited.

Where the homicide is sought to be justified as having been committed in defense of another, the defendant stands in his place, and may do for him what he might lawfully do for himself. Biggs v. Commonwealth, 164 Ky. 223, 175 S. W. 379, Ann. Cas. 1916A, 1096; McHargue v. Commonwealth, 231 Ky. 82, 21 S. W. (2d) 115, and authorities therein cited. Accordingly, the defendant may show that the deceased was assaulting or attacking the other person, that he entertained hostile feelings toward the person defended, and had made threats against him, and any other relevant fact which

would be competent if that one were on trial and relying upon a plea of self-defense. Tapscott v. Commonwealth, 140 Ky. 573, 131 S. W. 487; 30 C. J. 248. But, with one exception to be noted, the threats and hostility of the deceased in this case were not directed toward the person defended.

The philosophy supporting the admission of threats made by the deceased under conditions above stated, where the justification is self-defense, at the same time forbids their admission under the circumstances here presented. The defendant did not claim he acted in his self-defense. There was no claim that he was in any danger at the hands of the deceased nor that until the very second of the shooting the deceased was aware of his presence, that is, of the person against whom his previous hostility had been directed or manifested. The threats were not meant for the defendant's wife. Their admission in evidence could prove nothing as between the person attacked and her assailant, and they were therefore irrelevant to the issue.

It was so held in State v. Downs, 91 Mo. 19, 3 S. W. 219, where the defendant, a saloon keeper, killed a man, as he claimed, only in defense of his young son then in the saloon. He offered to prove that a short time before the difficulty the deceased had threatened personal violence to himself, and had also threatened to "clean out" his saloon. But the threats had not been communicated to the defendant, and the exclusion of the evidence also was affected by the rule obtaining in the Missouri court that previous threats were not admissible until there was evidence of an assault first made by the deceased, and the assault on the boy could not be said to have been made in execution of the threats.

A similar conclusion was reached in State v. Marshall, 35 Or. 265, 57 P. 902, 903, where, after the defendant had testified concerning the fears he entertained for the safety of his brother who was being assaulted at the time he killed his assailant, he stated, "He had threatened to kill me before."

It was upon the same reasoning that this court, in Green v. Commonwealth, 33 S. W. 100, 17 Ky. Law Rep. 943, held that it was error to admit testimony that the appellant had said he intended to kill one Wakes, where the appellant was being tried for the killing of Annie Green, his wife, on account of her association with Wakes.

We conclude, therefore, that the evidence of threats and hostile demonstrations on previous occasions on the part of the deceased towards the appellant was improperly admitted.

But one witness, Harrison Tanner, testified that on the morning before Turpin met his death he asked him why he did not move out and let Girkey move in, and that decedent replied, "I had rather die and go to hell as to see him move in," and the witness told him to do as the Book said, and he said, "He would go to hell before he would." We are of the opinion that this evidence was competent as tending to show the state of mind of the deceased concerning the occupancy of his former home by the appellant and his family. This conclusion is supported by the case of Mortimore v. State, 24 Wyo. 452, 161 P. 766, where a son killed his drunken father while he was in the act of assaulting his brother, and the court held it was proper to admit previous specific acts of violence on the part of the father towards members of his family because they were facts which might have affected defendant's apprehensions in respect to the safety of his brother and the necessity for protecting him at the time.

The trial court gave to the jury an instruction based upon the right of the accused to defend his wife from death or serious bodily harm at the hands of Turpin, about which no complaint is made. He also gave an instruction on the theory of the defense of habitation which the Attorney General maintains was not authorized. The instructions submitted to the jury first predicate that, if they should believe from the evidence that the defendant was in good faith occupying the premises as a home, and then that Turpin entered it armed with an ax, and the defendant believed, and had reasonable grounds to believe, that the deceased entered with the intention of forcibly injuring by personal violence the defendant or any member of his family, he had the right to defend his home and to use such force as he believed, and had reasonable grounds to believe, was necessary for its protection, and, if he shot Turpin, using only such force as that indicated, the jury should find him not guilty.

We are of the opinion that the evidence did not sustain such an instruction. The immediate provocation for Turpin's assault upon the defendant's wife appears to

have been the incipient quarrel between the two women, and, though it may have been engendered by Turpin's opposition to Girkey moving into the house at the time, the defendant's only claim of justification, as stated, was the necessary defense of the person of his wife. It is sometimes difficult to draw the line between what facts warrant or require an instruction on the defense of habitation and what do not. This case, it seems to us, falls within that class where it appeared that the evil design of the assailant was against an individual personally, and not upon the home as a house of refuge, where no violence was intended to any one in the home, and there was no felonious design upon the security of the residence or its contents. Illustrative cases which may be noted are: Winchester v. Commonwealth, 210 Ky. 685, 276 S. W. 575; Slavin v. Commonwealth, 229 Ky. 534, 17 S. W. (2d) 432 (Where the defendant claimed only that he shot in defense of his wife and himself); White v. Commonwealth, 225 Ky. 596, 9 S. W. (2d) 720; Howard v. Commonwealth, 227 Ky. 142, 12 S. W. (2d) 324; Farmer v. Commonwealth, 234 Ky. 673, 28 S. W. (2d) 978, 979; Smith v. Commonwealth, 236 Ky. 736, 33 S. W. (2d) 688.

Accordingly, the law of the case is certified.