## Burkheart et al. v. Commonwealth.

(Decided Sept. 26, 1933.)

L. D. LEWIS and WILLIAM DIXON for appellants.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Jefferies Nantz, Willie Burkheart, and Andrew Burkheart were indicted by the grand jury of Leslie county charged with the crime of willful murder committed by the shooting and killing of Hobart Nantz. The indictment contains three counts charging the three as principals, and that the offense was committed by the means of a conspiracy; that Jefferies Nantz did the shooting and killing, and the Burkhearts were aiders and abettors; that Willie Burkheart did the shooting and killing, and Nantz and Andrew Burkheart were aiders and abettors.

The verdict of the jury fixed the punishment of the Burkhearts at five years in the penitentiary, and acquitted Jefferies Nantz. For reversal, it is urged that the verdict is flagrantly against the evidence, that improper argument of the attorney of the commonwealth was permitted, and that the court erred in the instructions given to the jury.

A correct disposition of these questions requires a short statement of the evidence. At the regular November election, preceding the 15th day of November, 1932, Willie Burkheart was near the voting place. At that time he was a deputy sheriff, and had in his possession warrants of arrests for parties residing on Peters branch of Beech fork, and was intending to go there to execute them.

Jefferies Nantz narrates the facts in this language, "Me and Will went in the store, and Will went out to fix some things on his mule, and I looked out the door and Hobart was standing there. And Hobart started to walk off and Will asked him to wait. Hobart just jerked his pistol and threw it on Will and said, 'Don't move.' I saw on Hobart, a big bulk and the edge of a fruit jar and a pistol. He pulled his coat down over his pistol * * * and backed off and got across a little branch and said, 'Don't come across that branch,' and Will just

stood there and I walked out then and said, 'Boys, don't have no trouble here'; and then Addie Nantz came out and she told them not to have no trouble, and then Will Nantz's wife came out and told Hob to go on and Hob went on. * * * In a few minutes Will went down and Andrew Nantz and Hobart Nantz were standing there and I saw Andrew Nantz looking at Will Burkheart and Andrew Nantz said, 'What in the God damn hell are you looking at me for?' and Will said, 'Andrew I am not looking at you that I know of;' and Andrew said, 'You are looking God damn ill at me.' Hobart Nantz was there with his pistol in his pocket with his hand on it. * * * When me and Will got down the creek apiece I said, 'I believe I will go and get warrants for them,' and I did that night and brought them back and put them in Will Burkheart's hands and he deputized me to go with him and make the arrests. He said, 'We will have to have some more men, I will go and get Andrew Burkheart and Bill Ray and whoever I can find to go with us.' I went to Josira Burkheart's and got a gun, and came back down to old man Will Burkheart's home and Andrew Burkheart came then. * * * We just came on ourselves and got down to Harmen Farlers and Jessie Wilson and Henry Whitehead were working and called for them. Some of us said, 'Let's get Harmen to go with us,' and he said, 'Boys, it is all in the family, and I don't want to go.' "

On arriving at the home of Hobart Nantz, the Burkhearts and Jefferies Nantz claim they heard loud voices, like quarreling. They went up through the field where Will Burkheart claims he had information there was a still. They left the field and reached a big beech tree about 200 yards below Hobart Nantz's residence. The Burkhearts and Jefferies Nantz claim that, while they were near this tree, Hobart Nantz's wife walked down the road and said to them, "What are you damn dogs doing here?" Will Burkheart informed her they were looking for a still. She turned and started toward her home. The Burkhearts and Jefferies Nantz walked behind her, when Hobart Nantz came up over a bank with a shotgun and pistol and said, "What in the God damn hell are you fellows

doing here?" Will Burkheart said to him, "We have papers for you, lay your gun down and let's have no trouble," when Hobart informed them they could not arrest him. He began cursing and backing off. He stopped, "threw out his foot," "threw his gun up," and said, "God damn you, don't come another step." Will Burkheart and Andrew Burkheart fired their guns instantaneously. Hobart Nantz fell to the ground, and one shot entered his body one and one-half inches to the left of the nipple. He died immediately. His widow explains the encounter thus: Andrew Nantz and wife spent the night before the killing at the home of Hobart Nantz. They left the home of Hobart about 11:30, before the arrival of Burkhearts and Jefferies, and before she left her home. She claims when she reached a point about 200 yards from her home she saw them behind a tree, and recognized Will Burkheart; that she inquired of them what they wanted, when they stated they were hunting for a moonshine still. She told them to go ahead and search. She turned and went toward her home, the Burkhearts and Nantz following, about fifteen steps behind her. As she approached her home, she saw Hobart Nantz with their baby on his hip, a shotgun in one hand, and a pistol in the other. Will Burkheart at the time had a high-powered rifle, Jefferies Nantz a Winchester, and Andrew Burkheart a pistol. Will Burkheart said, "Now, Hobart don't get behind your wife." At the time he made this statement he had his gun in a shooting position. Will Burkheart also said, "Hobart, we have some papers for you." Then Hobart put his pistol in his pocket and started toward the house, when Will Burkheart hollowed, "Halt, halt, stop," and then began shooting at Hobart. He fired two shots and Jefferies Nantz one. Hobart Nantz fell as Jefferies Nantz fired his shot. At the time they shot, Hobart was not doing or saying anything to them. He did not present his gun or pistol, and did not fire a shot. Will Burkheart got Hobart's gun and pistol and took them away with him. After Hobart fell he said, "Lord have mercy on me, you have killed me."

This resume of the evidence shows it was conflicting. The jury accepted the evidence in behalf of the commonwealth. It was sufficient to authorize and require a submission of the case to the jury. It was

for the jury to determine the credibility of the witnesses and the weight that should be given their testimony.

In the concluding argument to the jury, the attorney of the commonwealth argued "that the defendants, nor either of them, had any right to arrest the deceased because he was a deputy sheriff, and that deceased had as much right to arrest the defendants as they did him, that the warrant under which the defendants were proceeding is not a warrant for a felony. * * * That defendants had never made any return on the warrants and that this failure on their part was evidence of guilt." We shall hereafter consider this statement. The court gave to the jury instructions 1, 2, 3, 4, and 5, inclusive. No. 1 defines the word "feloniously" and the phrase "malice aforethought." No. 2 is in the approved form, and authorized a conviction of defendants of murder if the jury believed from the evidence beyond a reasonable doubt the killing was done with malice aforethought, but, if not done with malice aforethought, to find them guilty of voluntary manslaughter. No. 3 is the usual instruction on self-defense, with the qualification, if the defendants or either of them brought on the difficulty by first assaulting the deceased with gun or pistols, thereby making the danger to themselves at the hands of deceased, real or apparent, in this event they should not be acquitted. No. 4 defined the right of Willie Burkheart as deputy sheriff and of Jefferies Nantz as a person summoned to aid Will Burkheart as deputy sheriff to make the arrest of Hobart Nantz, with or without a warrant, and the duty of Hobart Nantz to submit to the arrest at their hands. This instruction was modified by this language:

"* * * Unless you shall believe from the evidence in this case beyond a reasonable doubt that the defendants Willie Burkheart and Jefferies Nantz conspired together and agreed with each other to first procure the warrants of arrest for the deceased for the purpose of taking his life or inflicting upon him some great bodily harm from the justice of the peace for the purpose of shielding or protecting themselves and for the purpose of giving the defendants, Willie Burkheart and Jefferies Nantz, an excuse to go to the home of the deceased Hobart Nantz for the purpose of

taking his life or inflicting upon him some great bodily harm, and unlawfully, wilfully and feloniously and with their malice aforethought took the life of the said Hobart Nantz, then you cannot acquit the defendants upon the ground of acting as an officer or in the discharge of the duties of an officer.''

No. 4 omits the name of Andrew Burkheart. It is conceded that Willie Burkheart was acting as deputy sheriff and endeavoring to arrest Hobart Nantz under a warrant then in his possession, and for that purpose Andrew Burkheart had been summoned by Willie Burkheart to aid him in making the arrest of Hobart Nantz. Therefore Andrew Burkheart was entitled to the benefit of instruction No 4.

The Burkhearts complain of the qualification of their right to self-defense as it is defined in instruction No. 3 and also in instruction No. 4. In respect to the qualifications in No. 3, the propriety of giving its turns on the circumstances and situation of the parties at the time of the act of killing. According to the evidence of the commonwealth, the defendants shot and killed the deceased at a time when he was making no threats or demonstration in any manner whatever, to do them or either of them any bodily harm. According to that in behalf of the defendants, when neither of them was making a demonstration to do bodily harm to the deceased, he drew his gun on them, and, after he did so, the defendants, Burkhearts, killed him. The evidence shows the deceased brought on the difficulty by throwing his gun on the defendants to shoot before the defendants or either of them shot or attempted to shoot him. Under these circumstances, it was improper to qualify their right of self-defense as defined in instruction No. 3. Shell v. Com., 194 Ky. 767, 240 S. W. 747; Smith v. Com., 215 Ky. 815, 287 S. W. 8; Howard v. Com., 202 Ky. 711, 261 S. W. 246.

We have repeatedly condemned such instruction under like facts and circumstances, and stressed the importance of giving an instruction on self-defense in the usual form, thus leaving the question to be determined by the jury in the light of all the facts and circumstances in the case, rather than in the light of certain particular facts, whether relied on by the commonwealth or the accused. Williams v. Com., 9 Bush,

274; Reynolds v. Com., 114 Ky. 912, 72 S. W. 277, 24 Ky. Law Rep. 1742; Heck v. Com., 163 Ky. 518, 174 S. W. 19; Chilton v. Com., 170 Ky. 491, 186 S. W. 191, Ann. Cas. 1918B, 851; Howard v. Com., supra.

A modification of instruction No. 4 is without evidence authorizing its giving. The mere act of an individual obtaining a warrant or warrant of arrest for another and placing them in the hands of an officer for execution, and the acts of the officer receiving the same for that purpose and summoning aid for the purpose of serving the same, and then proceeding to attempt to make the arrest of the person named therein, can hardly be said to amount to evidence of a conspiracy to murder the person named as defendant in the warrants of arrest. To accept evidence of such acts of the individual or the officer as evidence of a conspiracy to commit murder would not only hinder but defeat the enforcement of the criminal law. No other evidence of a conspiracy in this case is presented in the record. It is apparent that it is our view that the modification of instruction No. 4 was improper and should not have been given to the jury.

Criticism is made of instruction No. 2, with the insistence that the phrase, "that if either one or more of the defendants was present nearby and near enough so to do," authorized a conviction of all the defendants if one of them did the killing, and if either one or more of them "were present near enough to, and aided, abetted, encouraged, counseled, incited or commanded" the one or ones who did shoot and kill Hobart Nantz so to do. If any error was committed by the use of this language in instruction No. 2, it was cured by the last clause found in instruction No. 5. Brock v. Com., 221 Ky. 424, 298 S. W. 1087.

Objections were made and exceptions saved to the quoted statement of the attorney of the commonwealth, in his closing argument. The statement complained of was not warranted by the evidence and highly improper. Assuming same will not be repeated if another trial is had, we do not deem it necessary to give it further consideration.

For the errors indicated, the judgment is reversed and the prosecution remanded for proceedings consistent with this opinion.