## Estepp v. Commonwealth.

(Decided September 26, 1919.)

## Appeal from Boyd Circuit Court.

1.  Criminal Law—Homicide—Sufficiency of Evidence.—On a prosecution for homicide, evidence considered and held to sustain the verdict of death.
2.  Criminal Law—Homicide—Trial—Instructions.—On a prosecution for homicide, evidence considered and held not to support an instruction qualifying the right of self-defense.
3.  Criminal Law—Trial—Instructions.—Where on a prosecution for homicide there was no plea of insanity, it was error to instruct the jury that if they believed from the evidence, beyond a reasonable doubt, that defendant was voluntarily drunk or under the influence of intoxicating liquors voluntarily taken by him, such fact would not entitle defendant to an acquittal on the ground of unsoundness of mind.
4.  Criminal Law—Homicide—Misconduct of Counsel—Argument to the Jury.—While in a prosecution for homicide the Commonwealth's attorney may with propriety ask the jury to inflict the maximum penalty, he should ask it solely on the ground that the evidence heard by the jury authorizes such a penalty, and it is highly improper for him to go outside of the record and call attention to the fact that there is not today in the penitentiary a man who has been there twenty years, for the purpose of influencing the jury to give the defendant the death penalty, rather than a lesser punishment which the defendant might escape in part by being paroled.
5.  Criminal Law—Homicide—Admonition of the Court.—On a prosecution for homicide it was error for the court to admonish the jury that certain evidence in reference to indictments for gaming was admissible on the question of defendant's motive in killing the deceased, where there was no evidence that defendant had been indicted on the evidence of the deceased, or that the deceased took any part in procuring the indictments.

E. P. HARRIS for appellant.

CHARLES H. MORRIS, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Appellant, Miniard Estepp, who was convicted of murder and given a death sentence, seeks a reversal of the judgment.

Appellant, his brother, Lonnie Estepp, and the deceased, Frank Goodman, lived in Floyd county. On the evening of January 25, 1919, they came to Ashland. There they met appellant's cousin, Earl Estepp, and after purchasing and drinking a quantity of whiskey they went to the home of appellant's uncle, William Estepp, who lived a short distance from Ashland. On their arrival they went to the rooms of William Estepp and Ernest Drankus, who had retired, and gave them some whiskey. Appellant gave his pistol to his uncle, who placed it under a pillow. At that time, three young girls were in the sitting room, playing a graphophone. The men went into the sitting room and, after listening to the music and dancing for a while, they played "craps" and then engaged in a game of cards. While in the game of cards, a controversy arose between appellant and the deceased, Goodman, and they both jumped to their feet. Appellant picked up a revolver lying near and demanded that Goodman give him $5.00. Goodman said, "No, I won't give you the $5.00." Then appellant said, "If you don't give me the $5.00, I'll shoot your G—— d—— head off." Goodman replied that appellant had the advantage of him and could shoot if he wanted to, but that he would not give appellant the $5.00. Appellant then said, "No, I won't shoot you. I will just knock your head off." Goodman then asked for his hat, and stated that he would go back to town. Goodman spent some time, looking for his hat. While this was going on, appellant came to the room of his uncle and asked for his pistol, which his uncle declined to give him. Goodman then left the house and appellant went out about the same time. On going out Goodman found that he had two dice in his pocket belonging to Earl Estepp, and shortly thereafter returned and delivered the dice to Estepp. He then left the house. Five or ten minutes later two shots were heard, and in a few minutes appellant returned to the house. His uncle asked him if he had shot the boy, and appellant said, "He is all right." His uncle then stated that if the boy was not dead he would tell everything. Whereupon appellant replied that he wouldn't tell anything. Afterwards, Goodman's body was found with two bullet holes in it.

According to appellant's evidence, he and Goodman, at the latter's suggestion, agreed to be partners in the

gambling game, and the conversation in the house between him and Goodman was gotten up to avoid suspicion. When he left the house he had no purpose whatever of doing Goodman any harm. He took the pistol and cartridges because his uncle declined to give him the pistol which he had left with his uncle. Appellant's account of the homicide is as follows:

"A. Him and I went off down the road something like 100 yards; on the way going down we laughed and talked, and he first asked me if I was mad, and I told him no I was not mad that I had acted mad to keep them from suspicioning that we was buddies, and I asked him if he was mad and he says, no, and I asked him if he was going to "whack up" and he says, no, he won the money and was going to keep it and started towards his right hand pocket, put his right hand in his pocket and just about as he got his hand around, we was about the center of the road at that time; I didn't know if he had a knife or gun or what he had, never had heard him say and so I shot him to keep him from shooting me."

Appellant further stated that he weighed only 125 or 130 pounds, while the deceased weighed about 160 pounds, and that he shot the deceased because he did not believe he had any chance with him as the deceased was so much bigger than he was. A small knife was found in the pocket of deceased.

There is no merit in the contention that the verdict is not sustained by the evidence. Of course, the jury were not bound to accept appellant's account of the homicide as true, and even if they were inclined to believe what appellant said, they had the right to conclude that appellant did not have reasonable grounds to believe that he was in danger of death or great bodily harm at the hands of Goodman, in view of the fact that Goodman, before placing his hand in his pocket, stated that he was not mad at appellant. Indeed, there can be no doubt that the question whether the appellant was guilty of murder or acted in self-defense was for the jury, and if they believed him guilty of murder, they had the right to impose the highest penalty.

The instruction qualifying the right of self-defense presents a more serious question. That instruction is as follows:

"But the jury are further instructed that if they shall find and believe from the evidence beyond a reasonable doubt, that the defendant, Miniard Estepp, at a time when he was not in danger of death or the inflicting of some great bodily harm at the hands of Frank Good-man, armed himself with a pistol and thus armed followed or sought out the said Goodman for the purpose of having or engaging in a difficulty with him, and having found him, drew or pointed said pistol at said Goodman, or threatened to kill him, if he did not give him some money, and that by reason thereof was brought on and caused the difficulty, if any, in which the said Goodman was shot and killed and that the defendant willingly entered into the difficulty with said Goodman, if any there was, and willingly engaged in same up to the time said Goodman was shot on the occasion in question, then and in this event the defendant cannot be excused from killing said Goodman on the ground of self-defense and apparent necessity therefor as indicated in any of the instructions given you by the court. And the jury are further instructed that if they shall find and believe from the evidence, beyond a reasonable doubt, that the defendant at the time of the shooting and killing of said Goodman on the occasion in question, if he did so, was voluntarily drunk or under the influence of intoxicating liquors voluntarily taken by him, such a fact would not entitle the defendant to an acquittal on the ground of unsoundness of mind."

The Commonwealth insists that the first paragraph of instruction No. 4 was proper because appellant, while in the house of his uncle, did point a pistol at Goodman and threatened to kill him, if he did not give appellant $5.00. The instruction, however, is not predicated on what occurred in the house. It deprived appellant of the right of self-defense, if the jury believed from the evidence beyond reasonable doubt that he "at a time when he was not in danger of death or the infliction of some great bodily harm at the hands of Frank Goodman armed himself with a pistol, and thus armed followed or sought out the said Goodman for the purpose of having or engaging in a difficulty with him, and having found him, drew or pointed said pistol at said Goodman or threatened to kill him if he did not give him some money, and that by reason thereof brought on and caused the difficulty." It

will thus be seen that the instruction is predicated on the theory that appellant armed himself and followed Goodman for the purpose of engaging in a difficulty with him, and having found him, drew or pointed the pistol at Goodman or threatened to kill him if he did not give appellant some money. In other words, the instruction is predicated on what occurred at the time of the homicide, and that, too, when there was no evidence whatever tending to show that appellant followed the deceased and threatened to kill him if he did not give him some money. We therefore conclude that the instruction was erroneous because there was no evidence to support it, and we are also of the opinion that no instruction qualifying the right of self-defense should have been given.

We are at a loss to understand upon what theory the second paragraph of instruction No. 4 was given. Had appellant pleaded insanity the court might have given an instruction on that question, and at the same time qualified the instruction by giving one similar to the second paragraph of instruction No. 4. As a matter of fact, however, appellant did not plead insanity, and in the absence of such a plea, the second paragraph of instruction No. 4 had no place in the instruction.

In his argument to the jury, the Commonwealth's attorney used the following language:

"As Commonwealth's attorney, and in the name of society and this great state, I ask you to find the defendant guilty under instruction number one, and give him the maximum penalty known to the law. If you cannot find him guilty under instruction number one, then you should turn him scot-free. He is no more guilty of voluntary manslaughter than he is guilty of larceny or burglary under this evidence. If you find him guilty of voluntary manslaughter in two years he is subject to parole and will be a free man again. If you give him a life sentence he is subject to parole in eight years and will then be a free man. There is not today in the penitentiary at Frankfort a man who has been there twenty years."

While in a prosecution for homicide the Commonwealth's attorney may with propriety ask the jury to inflict the maximum penalty, he should ask it solely on the ground that the evidence heard by the jury authorizes such a penalty, and it is highly improper for him to go

outside of the record and call attention to the fact that there was not then in the penitentiary a man who has been there twenty years, for the purpose of influencing the jury to give the defendant the death penalty rather than a lesser punishment which the defendant might escape in part by being paroled.

While there was evidence with reference to indictments for gaming in the Floyd circuit court, there was no evidence that appellant had been indicted on the evidence of Goodman, or that Goodman took any part in procuring the indictments. That being true, the court should not have admonished the jury that the evidence referred to was competent on the question of appellant's motive in killing the deceased.

Judgment reversed and cause remanded for new trial consistent with this opinion.