## Spicer v. Commonwealth.

(Decided June 5, 1925.)

### Appeal from Breathitt Circuit Court.

1. Criminal Law—Refusal to Permit Accused's Counsel as Witness to Read Contradictory Testimony on First Trial Held Not Reversible Error.—Refusal to permit accused's counsel as witness to read contradictory testimony of state's witness on first trial held not reversal error, where the court himself read to jury all of contradictory statements of witness.

2. Criminal Law—Refusal to Permit Accused to Show Contradictory Testimony of Witness on First Trial, on Point Remotely Material, Held Not Prejudicial.—In murder prosecution, refusal of trial court to permit accused to show contradictory testimony of witness on the first trial, on point remotely material, if at all, held not prejudicial.

3. Homicide—Party Committing Homicide Must Establish Legal Excuse Therefor to Avoid Conviction.—Party committing homicide must establish legal excuse therefor to avoid conviction.

4. Homicide—Refusal to Give Peremptory Instruction for Accused Held Not Error.—In murder prosecution, refusal to give peremptory instruction for accused, who claimed deceased was assaulting accused's wife, held not error.

5. Criminal Law—That Testimony would Not have Influenced Court of Appeals to Return Verdict Held Not Sufficient to Disturb Verdict.—That testimony would not have influenced Court of Appeals to return verdict of guilty held not sufficient to disturb verdict of guilty as being flagrantly against evidence.

6. Homicide—Verdict Held Not Flagrantly Against the Evidence.—In murder prosecution, in which accused claimed deceased was assaulting his wife, verdict of guilty of murder held not flagrantly against the evidence.

A. H. PATTON and A. S. JOHNSON for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Thomas—Affirming.

Appellant, Seldon Spicer, resided on Tharp's branch about 400 or 500 yards from where it empties into Cane creek. Late in the afternoon of December 5, 1922, he shot and killed Harve Potter about two-thirds of the way between his residence and Cane creek along which runs a public road, but the hollow running up to his house is winding and one located at the mouth of the branch cannot see it. The same is true at other places between Cane creek and his house. He was indicted by the grand jury of Breathitt county and charged with murdering Potter and upon his first trial he was convicted and sentenced to the penitentiary for life. He appealed from that judgment and it was reversed in the case of Spicer v. Commonwealth, 199 Ky. 658, solely upon the ground of the failure of the court to properly instruct the jury. Following that, he had two mistrials and on his fourth one he was again convicted and given the same punishment that he received on his first one. The court declined to set aside the verdict of the jury and rendered judgment thereon from which this appeal is prosecuted.

Three grounds are urged for a reversal: (1), erroneous rulings of the court in excluding testimony offered by defendant; (2), error of the court in overruling defendant's motion to instruct the jury to find him not guilty; but if mistaken in that, then, (3), that the verdict is flagrantly against the evidence; each of which we will discuss and determine in the order mentioned.

1. The complaint under this ground grows out of an effort on the part of defendant to contradict some of the witnesses for the Commonwealth by showing that they had testified differently upon former trials. The witnesses so attempted to be contradicted were Henry Potter, the brother of the deceased, and Polly Turner, his sister. On two points upon which the witness, Potter, was attempted to be contradicted the court permitted the attorney to pursue his own course and to read from the stenographic notes of his testimony on a former trial showing different statements from what he testified at this trial and about which he had previously been asked. On another point the court, for some reason unexplained, would not permit the custodian of the former testimony to read the contradictory testimony, but the court him-

self read to the jury all of the contradictory statements of the witness and admonished it at the time that it was for the purpose of contradicting the witness, Potter, and not as substantive testimony. We are unable to see wherein the error, if it be one, in any wise prejudiced the substantial rights of defendant. The material and essential thing was to get before the jury the fact that the witness had testified differently on the point involved at a former trial, and whether that information was conveyed by means of a witness on the stand or from the court reading the former testimony to the jury from the official transcript containing it, and which it was agreed was a true transcript, could have no material bearing upon defendant's rights and the argument to the contrary is a mere quibble.

Mrs. Turner was contradicted in the proper way upon all the points desired by defendant's counsel, except one, and the court refused to permit her testimony on a former trial in supposed contradiction of her testimony at this trial upon that one, but the record does not disclose the reason therefor. However, a sufficient one is that there was no substantial difference between her former testimony and what she gave upon this trial on that point, which was the condition of the tail of the coat deceased was wearing when the witness found him lying in the path where defendant shot him, it being claimed by defendant that the witness testified on the former trial that the back of his coat was pulled up so as to reach or cover his shoulders, when the witness testified on this trial to substantially the same facts, but was not positive as to the height on the body of deceased that the folded coat reached. Even if we should hold that the court should have permitted the contradictory statements it would not then follow that a reversal should be ordered therefor, since the point was but remotely material, if at all, and the court's ruling could not possibly affect the defendant's rights. We, therefore, conclude that there is no merit in this ground.

2. Practically all of the testimony of defendant was set out in our former opinion and some of the testimony of the Commonwealth also referred to in that opinion. Two of the Commonwealth's witnesses referred to therein (Lovejoy and White) did not testify upon the trial now under review, but the admission by defendant that he shot and killed Potter was proven by another witness. Notwithstanding the insertion of defendant's

testimony in the former opinion, we deem it necessary under the contentions now being made to briefly restate that testimony and to likewise insert the material facts proven by the Commonwealth.

Defendant testified that he left his home that morning on his mule and went to Jackson, the county seat, a distance of about seven miles; that shortly after he left his home he passed on the road the deceased and that he left Jackson to return home not later than 1:30 p. m. and that it would take him something like one and a half or two hours to reach his home; that at the mouth of the branch upon which he lived he saw Polly Turner picking up coal and asked her and her small child, who was with her, to go up to his house, which she declined; that when he got within thirty or forty yards of his house he discovered his wife engaged in getting some stove wood out of a drift on the branch on which he resided; that he told her to go down the branch to a potato patch some three hundred yards from his residence and get some potatoes for supper; that he rode on to his house, dismounted and took the saddle off of his mule and put it in the stable and fed it; that he afterwards procured some corn and fed his fattening hogs, which were in a pen nearby his residence, and while he was watching them eat the corn he heard his wife cry out from the direction of the potato patch and call him "To run here, run here;" that instead of going directly to her he went back to his house to procure his pistol, but not finding it he got his shotgun, which was loaded with buckshot, and started down toward the place in the bottom where his wife was supposed to be, but circled around a different route and that when he got within about thirty or forty feet of his wife he discovered her lying upon the ground with the deceased over her and holding her with both hands and that his wife's dress was lifted up and he demanded of the deceased to let her go, when he released one of his hands and raised up, whereupon defendant shot him in the back of his head, penetrating his skull with at least three buckshots and causing his brains to spill in the path where he was subsequently found. He testified that he had not seen the deceased since that morning on his way to Jackson, and that there was bad feeling between the two, but he claimed that it existed only on the part of deceased and not on his part, and grew out of defendant testifying against deceased at some trial involving a violation of the prohibition act.

Defendant proved by one witness that deceased, about twenty-five or thirty minutes before he was shot, passed her house at some point on Cane creek and inquired of her if she had seen defendant pass up towards his house. He introduced witnesses who testified that deceased had on different occasions stated to them that he intended to criminally assault Mrs. Spicer if she would not consent to his desires. But the testimony of those witnesses is told in such an unnatural way as to create great doubt concerning its truth. Defendant also proved by a number of witnesses his good character and the bad character of the deceased.

If what we have stated, which is the substance of all of defendant's proof, was all of the testimony in the case it would be exceedingly doubtful if a peremptory instruction would have been proper, since the jury had the right to weigh the probabilities as well as improbabilities of the accuracy of the testimony and to measure its credibility by human experience, since, after proof that the defendant committed the homicide, it devolved upon him to establish a legal excuse therefor, and if in his attempt to do so the proof that he offered was inherently incredible, the Commonwealth should not be foreclosed, but the jury should be permitted to pass upon the facts. In the very recent case of Johnson v. Porter, 208 Ky. 390, in discussing the exact point we said: "As appellant's credibility was for the jury, it was not required to accept his statement as to what occurred when he and Price were the only persons present, especially, in view of his self-interest and the fact that he was contradicted on other points. Estepp v. Commonwealth, 185 Ky. 156, 214 S. W. 891. Looking at the case in the light of all the facts and circumstances, we conclude that it was for the jury to say whether appellant acted in his necessary, or apparently necessary, self-defense." To the same effect is the case of Simmons v. Commonwealth, 207 Ky. 570, and in those opinions other cases are cited from this and other courts.

An analysis of defendant's testimony will demonstrate that at many points it fails to harmonize with human conduct and experience, and its verity is punctured by admitted facts and circumstances tending to disprove it. First among which is, that when his wife gave him her distressing call the first incentive would naturally be to go immediately to her and not delay by

going back to his house for the purpose of arming himself since nothing had been done or said to indicate to him that she had been attacked by a man or any other sort of creature. Neither was it natural for the deceased to continue in his unlawful efforts after Mrs. Spicer had called to her husband but a comparatively short distance away. It also must not be overlooked that it is uncommon for potatoes to be in a patch and undug at that season of the year, and no one testified in this case to the actual existence of any such potato patch. Moreover, according to defendant's testimony, he had been at home as much as thirty minutes before he received the distressing call from his wife and during that time she could have dug a large quantity of potatoes, but instead, according to the record, she procured none, for there is no testimony in the case that she had gotten a single one. There was likewise a failure to prove by any witness that the front part of deceased's clothes was in any wise disarranged but which would have in all probability been so if he was pursuing the purpose to which defendant testified. It might also be observed that the natural outcry of defendant's wife, under such circumstances, would not have been "run here," but would have conveyed the information to her husband as to the character of attack that was being made on her and who was the perpetrator. There are other facts appearing in the proof of defendant, which more or less detract from its verity but which we deem it unnecessary to refer to.

On the other hand, the Commonwealth proved that on the side of the hill, some twenty feet or more above the path in which deceased fell, and which ran along the branch, there was a sink on a bench in a side of the hill which the witnesses described as resembling a hole where a tree had been blown up in the past. Tracks about the size of defendant's came from his house to that place and left it going back to his house. Between it and the place where deceased was shot in the path was a dogwood bush with one of its limbs freshly shot off. In the sink were broken down weeds and stirred up leaves indicating that some one had been located there, and the tracks indicated that defendant, instead of going down the path from his house in response to his wife's distressing call, had gone around the foot of the hill to the sink and hid himself therein until deceased came along the path and then shot him. The Commonwealth

also proved that there was no other fresh track in the path, except that of deceased, and that if defendant's wife went to the potato patch, as he claims, she necessarily traveled some other route than the path. Other strange and unnatural conduct was, that the defendant sent his wife as a messenger to notify a brother of the deceased of the homicide and he, himself, left her alone and spent the night elsewhere, not surrendering himself until more than twenty-four hours after the homicide and after officers were searching for him. There was no mud on the back of the dress worn by Mrs. Spicer, nor was there any on the knees of the deceased, though there was testimony by defendant, his mother, and step-father that Mrs. Spicer's dress was torn at one place and that she had slight bruises on her limbs. However, no other of her neighbors who saw her after the homicide testified to any such facts. A careful survey of the testimony, as above outlined, is more than sufficient to show that there was no error in refusing the peremptory instruction.

3. We have frequently held that circumstantial evidence was sufficient to sustain a verdict of guilty in a criminal prosecution. At the same time it was said that a conviction would not be upheld where the facts and circumstances created no more than a bare surmise or suspicion of guilt; but it requires no trained or experienced mind to discover that the testimony in this case goes far beyond that of creating only a surmise or suspicion. It is equally well settled that, although the testimony upon the whole might not have influenced us as jurors to return a guilty verdict, yet that fact is not sufficient to disturb the verdict on the ground that it is flagrantly against the evidence. A recent case so holding is McCurry v. Commonwealth, 205 Ky. 211, in which upon the point of practice involved we said: ''The jury no doubt knew the parties, as well as the witnesses, it heard their testimony and saw their demeanor on the stand; it was also, no doubt, familiar with the state of feeling existing between the two participants, and as we view the record it is entirely without the province of this court to say under the facts and proven circumstances that the verdict was unwarranted as being flagrantly against the evidence. . . . And, we are authorized to reverse the judgment as being flagrantly against the evidence only when it appears that it was so much against

the weight of the evidence as to shock the conscience and to clearly appear that it was the result of passion and prejudice on the part of the jury.''

We so held also in Kirk v. Commonwealth, 192 Ky. 461, and Slaton v. Commonwealth, 193 Ky. 449. Defendant has had four trials by juries selected from the county of his residence. None of them were convinced of his innocence and two of them found him guilty of murder.

Were it necessary we believe we would have no trouble in discovering a motive which is veiled, though not entirely hidden, by the proof in the case; but whether so or not, we are convinced that the case is not one demanding a reversal of the judgment on the ground that the verdict is flagrantly against the evidence, and it follows that the judgment should be, and it is affirmed.