## Fugate v. Commonwealth.

### (Decided December 8, 1925.)

## Appeal from Powell Circuit Court.

1. Criminal Law—Nature of Evidence of Character Witness Stated.—Evidence of character witness consists of his own opinion or conclusion, as derived from common report touching reputation of person under investigation in the neighborhood of his residence.

2. Witnesses—Character Witness May be Cross-examined as to Conflicting Opinions and Reports and Rumors Concerning Particular Acts or Offenses.—Information, accuracy, and candor of character witness may be tested on cross-examination, by asking him as to having heard conflicting expressions of opinion by other persons on the same subject, as well as to reports and rumors in the community imputing particular acts or offenses to such person.

3. Witnesses—Cross-examination of Character Witness Should be Limited by Admonition of Court Dening its Purpose.—Cross-examination of character witness as to conflicting expressions of opinion by others, and rumors concerning particular acts, should be limited by admonition of court dfiening its purpose upon motion of party aected, or upon his obection to its admission.

4. Witnesses—If in Cross-examining Character Witness Questions are Answered in the Negative, Court Should Exclude them and Admonish Jury that they Cannot be Considered.—If, in cross-examining character witness as to conflicting expressions of opinion by others, and rumors concerning particular acts, questions are answered in the negative, court should exclude them and admonish jury that they cannot be considered for any purpose.

5. Witnesses—Admonition to be Given when Character Witness Answered Questions on Cross-examination in Affirmative Stated.—If, in cross-examining character witnesses as to conflicting expressions of opinion and rumors cencerning particular acts, questions are answered in affirmative, court should substantially tell the jury that matters referred to are not in issue, and that answers should not be regarded as evidence of truth of such matters, or as evidence of substantive fact, but may be regarded by jury in considering credibility and accuracy of witness only.

6. Witnesses—In Prosecueion of Officer, Asking Character Witness Questions Based on Assumption that Defendant had been Arrested for Beating His Wife Held Improper.—In prosecution of officer for homicide while making arrest, asking character witness on cross-examination questions assuming that defendant had been arrested for beating his wife, and asking if this would change witness' opinion, held improper, since acts, if true, were inadmissible as substantive evidence, and, if untrue, defendant had no way of disproving them.

7. Witnesses—Where Officer Puts General Reputation in Issue, His Reputation as Arresting Officer May be Developed on Cross-examination.—Where officer, prosecuted for committing homicide while making arrest, puts general reputation for peace and quietude in evidence to illustrate plea of self-defense, his reputation as an arresting officer may be developed on cross-examination of character witness.

8. Witnesses—Asking Character Witness, in Prosecution of Officer, Whether Defendant's Reputation was that of a Dangerous and Violent Man in Making Arrest, Held Improper.—Where officer, prosecuted for committing homicide while making arrest, put his general reputation for peace and quietude in issue, to illustrate plea of self-defense, asking character witness on cross-examination whether defendant's reputation was that of a dangerous and violent man in making arrest, held improper.

BENTON & DAVIS, A. F. BYRD, and JOHN D. ATKINSON for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

On Sunday, the 8th day of June, 1924, James G. Fugate, a deputy sheriff of Powell county, shot and killed Ben Willoughby. He was indicted, tried, convicted of manslaughter and sentenced to twenty-one years in the penitentiary. The only grounds relied upon for a reversal of the judgment are (1) The admission of incompetent evidence. (2) Error of court in an admonition to defendant's counsel during the argument of the case.

The facts are: Ben Willoughby, an elderly farmer, entertained his children and their families at a dinner on the day of the homicide. Several of these came on an excursion train from Cincinnati to Clay City and drove 2 1-2 miles to Willoughby's home in machines and returned to Clay City in the same way in the afternoon for

the purpose of taking the train back, Willoughby and his daughter accompanying them. A considerable crowd was gathered at the depot and a number of cars parked near the platform. Members of the party were talking loudly as they approached the station, and there is evidence that Fred Schmidt, a nephew-in-law, and George Collins, a guest, were intoxicated. After getting out of the car Willoughby and Schmidt joined some other parties at a set of scales near the station and from there went across the railroad in the rear of a shed, returning in a short time. Defendant was watching them and also went to the same place, where he found an empty bottle having the smell of moonshine liquor. Upon his return he placed Schmidt under arrest and searched him. Willoughby remonstrated with him and he was also placed under arrest, the defendant deputizing one Potts to take him in custody. Willoughby was in his shirt sleeves and there is a conflict in the evidence as to whether or not he was searched at that time.

The defendant started to carry his prisoners before a magistrate. To do this he was required to cross the platform and railroad tracks. As he reached the platform he encountered George Collins and arrested and searched him for drunkenness. The train was almost due and Ben Willoughby, who possessed a naturally loud voice, protested and insisted upon Schmidt being permitted to return on the train, and called on his son, Hobart, who was also a member of the party. Hobart came from the far end of the platform and joined the crowd around Fugate, addressing him in a boisterous way, and in the melee Fugate shot Ben Willoughby one time, the ball entering the front of his abdomen and producing a wound which caused his death the following day.

It is the theory of the Commonwealth, supported by the evidence of a number of witnesses, that none of the Willoughby party was intoxicated; that defendant arrested Schmidt and Collins for having whiskey in their possession, but refused to tell them the purpose of the arrest; that deceased was unarmed and known to be so by the defendant; that he was not interfering with the officer but with his uplifted hand was gesticulating and pleading in his noisy way for permission to give bond for Schmidt that he might go back to work; that he called for Hobart for this purpose only and that no one offered any resistance to the officer.

The defendant's theory is that both Schmidt and Collins were drunk; that when he arrested Schmidt the deceased jumped in his face and said, "You can't take this man." He drew his pistol and told Potts to arrest deceased, which he did without searching him, and he returned his pistol to its holster and backed toward the railroad tracks with the prisoner following. Someone said, "Come on, Hobart, they have got Frank Schmidt arrested, let's go take him;" at that juncture he arrested George Collins, who had been eluding him and Potts deserted him. Deceased again interfered and called loudly for Hobart, who came running up, jerked him around and said, "Who in the hell are you?" Defendant was crippled in his left hand while Ben Willoughby was large and muscular. His first inclination was to run, but did not deem this prudent; that as he turned around Ben Willoughby was right in his face; that he offered to draw his pistol and told Willoughby to stop; that he backed about five steps. Hobart and Ben Willoughby were crowding him and he again told them to stop and they continued to advance and he shot; that at the time he did so Ben Willoughby was coming at him as fast as he could, grabbing at him with his left hand and with his right hand at his trousers pocket; that Hobart Willoughby continued to advance and jabbed his hand in his face and said to him, "You G— d— s— of a b— shoot me; you ain't got nobody arrested." He only shot one time and that in self-defense. His testimony is also strongly corroborated, the evidence *pro* and *con.* on all the disputed points being supported by practically an even number of witnesses.

On the trial the defendant proved a good reputation. Over his objections and exceptions the character witnesses were asked the following questions on cross-examination:

Q. "Would it affect your opinion of his character if you had heard of him being arrested for whipping his wife?" Q. "You did not hear of a warrant being issued for him beating his wife about a year ago?"

Q. "As a matter of fact if he had whipped his wife would that change your opinion as to his character?"

Q. "If that was true your opinion would be that his character was bad instead of good?" Q.

"Did you ever hear it discussed that his wife had sued out a warrant for him?"

Q. "If in fact and truth you learned that a warrant had been issued for him for beating his wife would that change your opinion as to his character and reputation?" Q. "If you do learn it would that change your opinion of him?"

Q. "If it had been a fact that this man had beat his wife would that change your opinion of his character?" Q. "If it is a fact that he had beat his wife, she had run away from home to ask for protection at a neighbor's house would that change your opinion as to his character?"

Defendant also introduced witnesses showing that his reputation for peace and quietude was good, and the witnesses so testifying were asked the following questions on cross-examination:

Q. "Have you heard his reputation as an officer discussed as to being a dangerous officer, likely to do harm at any time?"

Q. "Do you know his reputation as an officer, as to whether he has the reputation of being a dangerous, violent omcer, a dangerous fellow, liable to hurt some one at any time in performing arrests?"

Q. "Do you know his reputation in Powell county, as to whether he is a dangerous, violent man in making an arrest?

Q. "Do you know from what people say about Mr. Fugate as an officer, his reputation, general reputation in Powell county as to whether he is a dangerous, violent man in making arrest?"

Q. "Do you know Mr. Fugate's general reputation as an arresting officer, as to whether he is considered by the people as a dangerous, violent man in making arrests?" Q. "Do you know his general reputation in Powell county as an arresting officer, as deputy sheriff, as to whether he is considered a dangerous, violent man in making arrests?"

The evidence of a character witness consists of his own opinion or conclusion as derived from common report touching the reputation of the person under investigation, in the neighborhood of his residence. In order for the jury to determine the proper weight to be given such evidence the witnesses' information, accuracy and

candor may be tested on cross-examination by asking him as to having heard conflicting expressions of opinion by other persons on the same subject as well as to reports and rumors in the community imputing particular acts or offenses to such person. 22 C. J. 483; McCreary v. Com., 158 Ky. 612; Johnson v. Com., 170 Ky. 766; Copley v. Com., 184 Ky. 185; Steele v. Com., 192 Ky. 223. But it is a dangerous character of evidence and should not be extended beyond its true limits, and should be limited by an admonition of the court defining its purpose, upon motion of the party affected or upon his objection to its admission. Johnson v. Com., 170 Ky. 766; Copley v. Com., *supra;* Steele v. Com., *supra.*

If all the witnesses answer the questions in the negative the court should exclude them and admonish the jury that they cannot be considered for any purpose. If the witness answers in the affirmative the court should substantially tell the jury that the matters referred to in those questions are not in issue, and that the answers of the witness are not to be regarded as evidence of the truth of such matters, or as evidence of any substantive fact, but that they may be regarded by the jury in considering the credibility and accuracy of the witness and for no other purpose. Although the defendant objected to this evidence the court did not admonish the jury as to its effect, an obvious error. Also in considering the above evidence it will be observed that the first line of questions related not to reports in the neighborhood, upon which the witness based his opinion, but assumed the existence of certain criminal acts upon the part of defendant, the witness being asked if he had known of these things would he still be of the opinion that the defendant had a good character. This line of questioning was manifestly improper. The acts in question if true could not have been introduced as substantive evidence. If untrue defendant had no way of proving that fact. If a mere insinuation not based on facts, such questions are puerile and have no place in a system of enlightened jurisprudence. Nor can it be doubted that they were of a character to influence the verdict. The jury might well reason that a sworn officer of the Commonwealth would not postulate a question upon a fictitious case, and assume that defendant was an habitual criminal.

For this reason the judgment must be reversed.

The second line of questions rest on a different basis. Defendant put his general reputation for peace and quie-

tude in issue. This was done to illustrate his pleas of justification and self-defense, on the theory that his reputation for peace and quietude were such that it would be unnatural and unreasonable for him to shoot a person without justification while making an arrest. Having thus put his general reputation in issue it logically follows that his reputation in the special line of endeavor in which he was engaged at the time he committed the act which he is seeking to illustrate may be developed on cross-examination. This forms a part of his general reputation and indeed is directly in issue. When we consider the fact that an individual with an ordinarily amiable disposition may "when dressed in a little brief authority" become a capricious and arbitrary officer, the propriety of such practice within reasonable limitations is manifest.

However, in this instance it appears to have been unduly extended, and as framed the questions were misleading and confusing. Such witnesses as qualified in this respect might have been asked, in substance, whether the reputation of defendant in making arrests was that of a prudent, orderly officer or that of a violent, dangerous or officious one, leaving the witness to state which characterization applied. The other questions raised are not likely to arise on another trial and it is not deemed essential to pass upon them.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.