## BROYLES v. COMMONWEALTH.

Court of Appeals of Kentucky.

Feb. 19, 1954.

Rehearing Denied May 7, 1954.

W. Clarke Otte, Harry F. Poynter, Louisville, for appellant.

J. D. Buckman, Jr., Atty. Gen., Earle V. Powell, Asst. Atty. Gen., for appellee.

COMBS, Justice.

George Richard Broyles appeals from a sentence of life imprisonment imposed after a jury found him guilty of the murder of Billy D. Smithers. He urges as grounds for reversal: (1) Improper cross-examination of defense witnesses by the Assistant Commonwealth's Attorney; (2) erroneous instructions; (3) improper argument by the Assistant Commonwealth's Attorney.

The appellant introduced several witnesses who testified that his reputation for peace and quietude was good. These witnesses were asked on cross-examination if they knew appellant had been arrested and convicted on separate occasions for drunken driving, for reckless driving, and for disorderly conduct. One witness admitted to having knowledge of these convictions; the others disavowed such knowledge. Appellant contends the questions were improper because they related to a trait of charactor not involved in the crime with which he was charged.

Broadly speaking, it is the rule in this state that where the defendant introduces evidence of his good reputation, the witness so testifying may be asked on cross-examination whether he has heard reports of particular acts of misconduct by the defendant. Fugate v. Commonwealth, 211 Ky. 700, 277 S.W. 1029; Wigmore on Evidence, 3rd Edition, Vol. 3, section 999. But the rule is not absolute. When there is an objection to such evidence or a motion to limit its effect, the court is required to admonish the jury that it is admitted only for the purpose of testing the accuracy and credibility of the witness' testimony and not as substantive evidence

of defendant's guilt. Copley v. Commonwealth, 184 Ky. 185, 211 S.W. 558. Moreover, inquiry may be made only about those acts of misconduct having some relation to the particular trait of character which the defendant has put in issue. Smith v. Commonwealth, 206 Ky. 728, 268 S.W. 328; Annotation 71 A.L.R. 1504, at page 1519.

Another limitation to the rule, but one with which we are not here concerned, is that the attorney for the Commonwealth may not deliberately inject into the case the issue of previous acts of misconduct by the defendant without some basis for his questions. Taylor v. Commonwealth, 269 Ky. 656, 108 S.W.2d 645; Mannix v. United States, 4 Cir., 140 F.2d 250.

The question here is whether one who is guilty of drunken driving, reckless driving, and disorderly conduct thereby evinces a trait of character inconsistent with a good reputation for peace and quietude. Courts in other jurisdictions have answered the question in the affirmative and have permitted questions designed to test the witness' knowledge of the other offenses. Adams v. State, Tex.Cr.App., 255 S.W.2d 513; Johnson v. State, 151 Tex.Cr.R. 110, 205 S.W.2d 773; Lowrey v. State, 87 Okl. Cr. 313, 197 P.2d 637; State v. Cyr, 40 Wash.2d 840, 246 P.2d 480; Vaughan v. State, 201 Ala. 472, 78 So. 378; Weakley v. State, 168 Ark. 1087, 273 S.W. 374; State v. Steele, 280 Mo. 63, 217 S.W. 80.

We find no Kentucky case directly in point, but an examination of related cases reveals that this court has taken a cautious attitude toward the introduction of such testimony. In Smith v. Commonwealth, 206 Ky. 728, 268 S.W. 328, the defendant, being tried for murder, introduced witnesses who testified that his reputation for peace and quietude was good. The witnesses were asked on cross-examination if they had heard that defendant had an illegitimate child by his sister-in-law; that he had taken another man's wife to Tennessee and lived with her, and that he had been convicted for the illegal sale of whisky. It was held that the questions should not have been permitted because responsive answers

would have thrown no light on defendant's reputation for peace and quietude.

In Albertson v. Commonwealth, 312 Ky. 68, 226 S.W.2d 523, the defendant, under charge of murder, introduced witnesses who testified to his good reputation for peace and quietude. The witnesses were asked on cross-examination if they knew the defendant had engaged in the illegal traffic of whisky. This was held to be reversible error on the ground that a responsive answer to the question would have had no bearing on defendant's reputation for peace and quietude.

 Although we are of the opinion the practice should be indulged in cautiously and that the rule should be kept within strict limitations, it seems to us that a conviction for drunken driving, or reckless driving, or disorderly conduct has some reasonable connection with a man's reputation for peace and quietude. In the legal sense, peace and quietude signify obedience to law, public quiet, good order and tranquility. A jury might reasonably infer that a propensity to drunken driving, reckless driving, or disorderly conduct is evidence of an attitude of disrespect for the law inconsistent with a good reputation for peace and quietude. It should be kept in mind that such evidence is never competent unless the defendant himself puts his reputation in issue; and even then it is competent only for the purpose of testing the witness' credibility, and not as substantive evidence. It is noted that proper admonition to this effect was given by the trial judge in this case. We conclude that the court properly permitted the attorney for the state to ask the defendant's character witnesses whether they had heard reports of his previous conviction for drunken driving, reckless driving, or disorderly conduct.

The Assistant Commonwealth's Attorney, in his argument to the jury, made these remarks: "You must bring in a conviction of at least life, and I want to say here and now that if you sentence him to life he is eligible for parole at the end of eight years." And again, "If you sentence him to 21 years on manslaughter, he is eligible for parole at the end of six years." And, "If you sentence him to anything less than ten years, he is eligible for parole at the end of one-third the time." Timely objection having been made and proper exception taken by the appellant, we are faced with the question whether this argument is sufficiently prejudicial to require reversal of the judgment.

This court has been condemning such arguments for more than 30 years. Estepp v. Commonwealth, 1919, 185 Ky. 156, 214 S.W. 891. As early as 1917 it was held in Postell v. Commonwealth, 174 Ky. 272, 192 S.W. 39, that it was reversible error for the court to tell the jury that a defendant, sentenced to imprisonment for life, could be paroled by the board of prison commissioners. In Seymour v. Commonwealth, 1927, 220 Ky. 348, 295 S.W. 142, 145, the argument of the Commonwealth's Attorney was similar to the argument here. The error was not relied on in the motion and grounds for a new trial and the decision was not based on that point, but Judge Dietzman, speaking for this court, said: "We are surprised that the commonwealth's attorney indulged in this argument, since in a long line of cases we have unhesitatingly condemned like arguments. (Citing cases.) * * * But the trial courts should not wait for this court to be finally confronted with a case where such an argument will be so prejudicial as to require a reversal, but should themselves discipline commonwealth's attorneys who will not abide by the rulings of this court in this matter." In Berry v. Commonwealth, 1929, 227 Ky. 528, 13 S.W.2d 521, the judgment was reversed because of a similar argument.

Commencing with Miller v. Commonwealth, 1930, 236 Ky. 448, 33 S.W.2d 590, and continuing to the present, the court has shown a reluctance to reverse on this point. In Powell v. Commonwealth, 1938, 276 Ky. 234, 123 S.W.2d 279, it was held that the statement of the prosecuting attorney that a life sentence was subject to parole, which might be exercised anytime after eight years, was not reversible error when unaccompanied by any other objectionable

remarks; and the earlier cases which had held such a remark to be a reversible error were overruled. But the court has consistently condemned such an argument and pointed out that it was improper. Some of the cases so holding are Barton v. Commonwealth, 1934, 257 Ky. 23, 77 S.W.2d 397; Lee v. Commonwealth, 1935, 262 Ky. 15, 89 S.W.2d 316; Bass v. Commonwealth, 1944, 296 Ky. 426, 177 S.W.2d 386; Howard v. Commonwealth, 1950, 313 Ky. 667, 233 S.W.2d 282.

In the very recent case of Adams v. Commonwealth, Ky., 263 S.W.2d 103, 106, the judgment was reversed because of an improper closing argument which the court said consisted of "a pyramiding, of highly improper statements". One of the statements referred to was a remark by the Commonwealth's Attorney: " 'Give him twenty-one years, and he is out in six.' " In spite of all that has been said on the subject, some prosecuting attorneys still persist in talking about parole in their closing arguments. Some of them have not only failed to heed the warnings of this court, but have made the problem more acute. In the earlier cases there usually was only a general reference to the possibility of parole with proper admonition by the court that such argument was improper, but in recent years the arguments have contained more and more detail and less admonition by the court. In this case, for instance, the argument included a résumé of a substantial part of the parole law, including the exact number of years a prisoner is required to serve under a given sentence before he is eligible for parole. The court's admonition was merely to the effect that a prisoner is not necessarily released on parole when he becomes eligible. In defense of such an argument it might be said that the parole system is a matter of general knowledge and the argument is harmless. It is true, we think, that the average juror does know there is a parole law in Kentucky, but it would be an unusual juror who would know the exact number of years a prisoner must serve before he becomes eligible for parole under a given sentence. Aside from

this; such an argument is not only wrong in principle, it is technically erroneous.

Under our theory of separation of governmental powers, it is the duty of the judiciary to obtain a conviction of those guilty of crime. But once that conviction has been obtained and the sentence imposed, it is the duty of, other departments of government to enforce the sentence and to determine when and under what circumstances the prisoner will be eligible for release. Therefore, when the judiciary attempts to anticipate the rules of the legislative and executive departments relating to the parole of prisoners, and attempts, in effect, to circumvent those rules it infringes upon the prerogatives of other departments of government.

A dissertation on abstract rules of law has no place in an argument to a jury from a procedural standpoint. The only law which the jury should be interested in is that contained in the court's instructions. The argument of an attorney should be confined to a discussion of the facts of the case and to the instructions as they apply to those facts. Housman v. Commonwealth, 128 Ky. 818, 110 S.W. 236; Martin v. Commonwealth, 255 Ky. 529, 75 S.W.2d 13. This rule is designed to protect both the litigants and the lawyers. Few of us are always entirely accurate in our extemporaneous expositions of the law. Although the attorney's explanation of the parole law in this case seems to be correct, the law might be radically different by the time the defendant would be eligible for parole. Such possibility merely points up the reason for the rule that in his argument to the jury an attorney's discussion of the law should be confined to the court's instructions.

If the attorney for the Commonwealth had made only general reference to the parole law, we might have been inclined merely to censure the argument and affirm the case. But since for the past 30 years we have been condemning arguments less pernicious than this, we cannot in good conscience continue to overlook the error.

We again take occasion to remind the Commonwealth's attorneys that the parole of prisoners falls within another department of government, and a discussion of the subject has no place in an argument to a jury.

Complaint is also made of the prosecuting attorney's discussion of the law of self-defense. On the next trial of this case the attorney should confine his argument on the law to a discussion of the court's instructions.

We find no error in the instructions.

The judgment is reversed because of the improper argument of the attorney for the Commonwealth.